JACOB C. HIGGINS V. EMILY JOHNSON'S HEIRS.

Where land is purchased with the funds of the community, and the deed is taken
in the name of the wife, the presumption is that the land remains community
property; but such presumption may be rebutted by proof that the husband
declared at the time, that his intention in taking the deed in his wife's name
was to make the land her separate property.  In such cases the transaction
operates as a gift from the husband to the wife.

That the husband and wife emigrated to Texas in 1840, the husband being at the
time considerably in debt; that the husband paid the money for a land certifi-
cate in 1845, and took the transfer in his wife's name, upon which a patent
issued to the wife, as assignee, in 1846; and that the husband declared at the
time of purchasing the certificate that he wanted his wife to have something
for the benefit of the family in case he should be pursued by old debts from
New York.  Held, to be sufficient evidence to sustain a verdict in favor of the
heirs of the wife, against subsequent creditors.

Expressions in the Opinion in the case of Smith v. Strahan, (16 Tex. R. 323,)
inconsistent with the ruling in this case, to be treated as *dicta*, or regarded as
modified by the rules and principles expressed in this Opinion.  ·

See this case as to the registry laws and notice to third persons, in cases of gift
from the husband to the wife, through the form of a conveyance from a third
person to the wife.

Appeal from Bastrop.    Tried below before the Hon. Thomas
H. DuVal.

Chauncey Johnson and his wife Emily emigrated to Texas in
1840.  In 1846 a patent was issued by the State of Texas to the
said Emily, as assignee of Daniel Winchel, for one-third of a
league of land situated in what is now Burnett county, and was
recorded in the office of the County Clerk on the 14th of June,
1851.  On the 16th day of August, 1850, the said Chauncey,
trading in partnership with his son John S. Johnson, under the
firm name of C. Johnson & Son, for value received, executed
a note to Jacob C. Higgins for $976 93, payable twenty-four
months after date, with interest at the rate of ten per cent. from
date.  In June, 1852, Emily died, leaving several children, who
were defendants to this suit.  In December, 1852, Chauncey
Johnson and his son John S. Johnson joined in a deed of trust of
the land above described, to secure said note to Higgins.  On the

5th of April, 1853, said land was sold on an execution against C. Johnson & Son, in favor of Bremond & Van Alstyne, on a judgment recovered on the 29th of September, 1851, in Bastrop county; and was purchased by F. W. Chandler, Esq., attorney of said B. & V., for $26. Chauncey Johnson died in 1854, and John S. Johnson administered on his estate. Higgins' claim was duly presented, and allowed and approved.

On the 24th of August, 1855, Higgins brought this suit in the District Court, against John S. Johnson, in his personal and representative capacity, Chauncey Johnson, Henry S. Phillips and his wife Emily, Joseph Glover and his wife Mary, Benjamin H. Glover and his wife Susan, Louis Eillers and his wife Caroline, heirs of said Emily Johnson, deceased, and F. W. Chandler, alleging that said defendants set up a claim to said land, and cast a cloud over the title thereof, thereby hindering the sale of said land for the use and benefit of the plaintiff, &c. On the 30th of August, 1855, Chandler conveyed to the plaintiff, by deed purporting to be in consideration of $150; and plaintiff filed an amended petition, alleging the facts, and substituting in lieu of his original prayer a prayer for a recovery of the land absolutely.

John S. Johnson, in his own right and as administrator of Chauncey Johnson, deceased, and Chauncey Johnson, confessed the plaintiff's allegations, and disclaimed all right, title and interest in the land. The other defendants took defence, claiming the land as heirs of their mother Emily, to whom they alleged said land belonged in her separate right.

At the trial, in addition to proof of the facts already stated, as to which there was no real question, the evidence was as follows :—

John S. Johnson, introduced by plaintiff, testified that his father, Chauncey Johnson, was considerably in debt when he came to Texas; that his father paid the money for the Daniel Winchel land certificate in 1845, and had it conveyed to Emily, his wife. Being cross-examined upon this point, witness said he thought his father intended to give his mother the land. Witness further stated that he, with all the rest of Chauncey Johnson's heirs, except the wives of Joseph and Benjamin Glover, wanted to make to plaintiff Higgins a deed to the land in controversy, for the purpose of discharging the plaintiff's debt; that at the time of giving the said land certificate to his wife Emily, in 1845, Chauncey Johnson stated that he wanted his wife to have something for the benefit of the family of Emily Johnson in case C.

Johnson should be pursued by old debts from New York; that C. Johnson & Son had been a mercantile firm in the town of Bastrop, and began business in 1849.

F. W. Chandler testified that the firm of C. Johnson & Son had proved insolvent, and that he had exhausted all the property of said firm before levying the execution of Bremond & Van Alstyne on the land in controversy.

The Court charged the jury, in effect, that where property is purchased with the funds of the community, and the title is taken in the name of the wife, the presumption is that such property becomes a part of the community; but that the husband could donate property to the wife; and if such was the intention of Chauncey Johnson in taking the transfer of the certificate in his wife's name, it would amount to a gift to her, and the land become her separate property.

Verdict for defendants; disclaimer of John S. and Chauncey Johnson, and judgment for plaintiff for their undivided interest; judgment for the other defendants. Motion for new trial overruled, &c.

There was a bill of exceptions, showing that the "defendants offer to prove, by witness J. S. Johnson, that Chauncey Johnson gave the land in controversy to his wife Emily Johnson, to which plaintiff excepts."

*G. W. Jones*, for appellant. I. The law presumes that property conveyed to the wife by onerous title, belongs to the community, and throws upon the party contesting the fact the *onus probandi* of rebutting this presumption by full and satisfactory evidence. For this purpose the appellees can rely upon no other ground than that the certificate upon which the land in controversy was patented, was conveyed to Emily Johnson at the instance of her husband Chauncey Johnson. This ground is clearly untenable. (Parker v. Chance, 11 Tex. R. 513.)

II. Conceding the ability of the husband to relinquish his right in the community property to the wife, the question presents itself, By what method can it be done? See Act of January 18th, 1840, (Hart. Dig. p. 454,) as to conveyances of goods and chattels or slaves, not on consideration deemed valuable in law. The transactions between husband and wife, where there are so many and various inducements to fraudulent transfers of property, cannot be subjected to less scrutiny and rigor than those between other persons.

As the law gives the husband the possession and control of the wife's property, it is legally impossible for the possession, in case of gift by the husband to the wife, to remain with the donee; and hence there can be no other way by which a husband can convey either chattels or lands to his wife than by deed or instrument of writing duly acknowledged or proven and recorded, as prescribed by the foregoing recited Act, so that the same may be valid as to creditors or purchasers without notice.

There is no evidence whatever charging Higgins with notice, not even as much as that he even knew anything of the conveyance of the certificate to said Emily. But a knowledge of this fact coupled with the issuance of the patent to Emily Johnson, could not affect the appellant with notice, since such transfer, &c., was no evidence that the husband thereby intended a donation to his wife. (Parker v. Chance, 11 Tex. R. 513.) Besides the proof wholly fails to show that the patent was recorded in the proper county, or that the appellant ever knew of its existence prior to the contracting of the debt for which the land was sold.

III. Admitting that the proof sustained the gift, and that it is not obnoxious to any of the foregoing objections, still the land in controversy would be community property. The gift of the certificate was in 1845. Under the law then in force all property, lands and negroes alone excepted, from whom and however acquired, was community property. (Hart. Dig. 755.) That land certificates are in no sense land, but in every respect treated as personalty, is a doctrine well established. (4 Tex. R. 289.) That the title to the land followed the property of the certificate is a legal proposition too clear for argument.

*Oldham & White*, also, for appellants, cited 8 Tex. R. 239, and argued that there was not sufficient proof of a gift to the wife.

*Hancock & West*, for appellees. The ground on which we seek to sustain this judgment is, that it was a donation from Chauncey Johnson to his wife; and as such, good against subsequent creditors. That a husband has the right to make a donation to his wife has been settled by our Supreme Court. (16 Tex. R. 314; Reynolds v. Landsford, Id. 286; Fitts v. Fitts, 14 Id. 443; Hartwell v. Jackson, 7 Id. 576.) And that a donation will be good and valid as against subsequent creditors, as in this

Higgins v. Johnson.

case, is a well established doctrine. (Adams' Equity, p. 369, marg. p. 147; 16 Tex. R. 286; Twine's Case, 1st vol. Smith's L. Cases.) The case of Parker v. Chance, 11 Tex. R. 513, arose under the civil law, and is very different from the case at bar.

In the case at bar the proof is believed to be conclusive. He directs that the title be made to her, and says that he intends to give it to her " for the benefit of the family." (16 Tex. R. 314.)

It was submitted as a question of fact to the jury, and their verdict is conclusive on that point and will not be set aside; there was testimony sufficient to sustain them in their conclusion. The patent was issued in her name, and was notice to all the world of her claim, though we admit that it was by no means conclusive of her right.

HEMPHILL, CH. J. But one question is presented in this case, viz: Was the land in controversy a portion of the community estate of Chauncey Johnson, or was it the separate property of Emily his wife? The certificate was conveyed and the patent issued to the wife; but the purchase being made by the husband, with community funds, and it being the *prima facie* presumption that a purchase, though in the name of the wife, is a portion of the common property, the question is whether the declarations of the husband, at the time of the purchase, are such as to repel this presumption and amount to a gift to the wife.

If there were no such estate as that of community between husband and wife, the mere act of the husband, taking a conveyance in the name of the wife, would, on principles of equity, be deemed *prima facie* an advancement to the wife; and under our laws, recognizing the rights of community, the presumption has been allowed in cases where the conveyance is to the wife, the purchase being made with the separate funds of the husband. (Smith v. Strahan, 16 Tex. R. 314.)

Where the purchase money is advanced by one person, but conveyance taken in the name of another, it becomes a question of intention, whether the purchase is for the benefit of the grantee in the deed, or of the person who advanced the money. The general rule is, that a trust results for the benefit of him who advanced the money. (Dyer v. Dyer, 2 Cox, 92; 1 Leading Cases in Equity, 188.) This is the *prima facie* presumption. But there are exceptions to the rule as well established as the

rule itself. For where the conveyance is in the name of the wife or of a child, the *prima facie* presumption is that the purchase is an advancement for the wife or child, rebutting the inference of trust for the husband or parent, which would have resulted to them had the deed been taken in the name of a stranger. (2 Story, 1204; Hill on Trustees, p. 135.) All of these presumptions may be rebutted by parol evidence. The legal effect of deeds, as a general rule, is to vest the property in the grantee. And when this effect is varied by parol evidence—when it is shown that the deed is not the true expression of the intention of the parties, and that this may be inferred from circumstances outside of the deed, the intention is a fact to be established by proof; and presumptions of such intention not being conclusive, may, on general principles, be rebutted by evidence to the contrary.

A conveyance to the wife, of lands purchased with the funds of the husband, is *prima facie* a gift from the latter to the former; but the presumption may be rebutted by proof that the purchase was for his own benefit.

Having glanced at the general rules with reference to the rights of parties, where the purchase is made by one, but conveyance is in the name of another, let us examine the question more immediately presented for decision.

There is no doubt that where a purchase is made with community funds, a mere direction by the husband to the vendor, to execute the conveyance to the wife, will not operate a change of estate, or convert community into the wife's separate property. The acquisitions of the joint or separate labor or industry of the partners become common property; and as a general rule, deducible from our former laws, property purchased during the marriage, whether the conveyance be in the name of the husband or the wife, or in the names of both, is *prima facie* presumed to belong to the community. This, however, is but a presumption, and may be rebutted by proof that the separate funds of either partner were employed in making the purchase; and if so, the property belongs to the one whose funds were employed in the acquisition; and provided also that the husband, in purchasing with his own means, takes the deed in his own name; for if this be in the name of the wife, the presumption will be that the property was intended for her and not for himself. It will be perceived that a wide door is opened for the admission of parol evidence to explain and modify deeds taken under this system

during marriage. In fact, a deed of purchase, taken in the name of the husband or of the wife, has a twofold aspect or character. It may be a conveyance of separate, or it may be a conveyance of common property, though as a general rule the purchase belongs to the community; and therefore arises the presumption, that though the deed, upon its face, conveys a separate right to the husband or wife, yet the conveyance is in fact for the benefit of the community. The presumption that the deed to the husband is a conveyance to the community is, under ordinary circumstances, much more strong than when the deed is to the wife. The husband has the active dominion and control over the common property. He can alienate, exchange or dispose of it, without the consent of his partner in matrimony; and his acts, if not done with a fraudulent intent to her injury, will be good. He sells and purchases in his own name. Conveyances are rarely taken by the husband in the joint name of himself and wife, or in her name alone; and therefore when made in the name of the wife, by the direction of the husband, the presumption that the property belongs to the common gains has not the force, attached to it when arising upon a deed to the husband, in his own name.

A deed to the wife is ordinarily but a deed to the community; yet as she may possess separate property, a conveyance of such property must be to her and in her own name. We have seen that a mere direction by the husband, when purchasing with common funds, to convey to the wife, would not vest in her any separate interest. But in this case there was more than a mere order to convey to the wife. The evidence showed to the satisfaction of the jury, and we think pretty clearly, that the husband intended to make to her a gift of the certificate. He was apprehensive of trouble from old debts in New York, and, as he said, he wanted his wife to have something for the benefit of the family, and therefore the assignment to her, of the certificate and not to himself. If the purchase had been with his own money, the conveyance to the wife would of itself have been presumptive evidence of a gift. If made with community funds, will not the deed, under the direction of the husband and with the avowed intention of a gift, operate in the same way to convey the property to her in her separate right?

Is not, in both cases, the only question that of the intention of the husband? In the former, the law *prima facie* presumes the intent to favor the wife. In the latter, the *prima facie* presumption is for the community; but this is rebutted by the ex-

press declarations of intention by the husband to make provision for the wife; and it is manifest that to secure this object he took the deed in her separate name. Is there anything in the fact that this was community property, which would disable the husband from converting it by donation into the separate property of his partner in marriage? He had the control and disposition of the common property. He could sell without the consent of his conjugal partner, and could doubtless, as under our former laws, make such moderate donations to strangers as would not operate a fraud upon the wife. She has also dominion in the property, but during the life of the husband it is not *in actu* but *in habitu.* It is passive.

A husband vested with such enlarged control, even to the power of donation in a limited degree to strangers, has certainly authority to transfer the whole interest in an article of community property to the wife as her separate, exclusive estate, she having already a passive, though undoubted right to a moiety of the property.

Whether a transfer of the whole of the community property to the wife, with a view of fixing upon it the character of separate property, would be sanctioned, can be determined when the question arises. By sustaining the gift in this case, the order, arrangement and control of property under the marriage relation is not materially changed. The husband is still the head of the community, with his power of disposition unabridged, except as to this land, which he has placed beyond his control, and secured to his wife against the accidents of his debts or misfortunes.

The debts which are pressing the property were contracted long after the donation to the wife, and cannot set up that the conveyance was in fraud of their rights.

It is not without some hesitation, that the Court has attained the conclusion which it has reached in this case. We cannot be insensible to the fact, that the admission of parol evidence to establish the intention of gift by the husband must offer facilities and temptations to fraud and perjury. This has been lamented by Judges and Courts; but such evidence has always been admitted in equity to enforce resulting trusts, and provisions for wives and children, which are exceptions to such trusts; and in this State such evidence is also admissible to establish parol trusts, as these are not prohibited by law; and in addition to these we must, under our system of marital property, resort to such evidence frequently to ascertain whether conveyances vest the property in

the community, or in the partner named in such conveyances. On principle it is not perceived why parol evidence may not be invoked to show the intention of the husband in having the deed of purchase with the common funds made to the wife; and if he intended a donation, why his intention should not have effect in the same way, and to the extent that his intention would be enforced provided the purchase had been made with his own funds; and particularly in a case where by the donation only a very moderate provision is secured to the wife.

There are some expressions in the Opinion in Smith v. Strahan, 16 Tex. R. 323, as to the effect of purchase in the name of the wife with community funds, which might lead perhaps to some misapprehension. That question was not before the Court, and the remarks on that subject may be treated as *dicta*. In contrasting the effect of a deed in the name of the wife when the purchase was with common funds, with that of deed when the purchase was with the separate funds of the husband, it was intimated that the motives for taking the deed in the name of the wife in the former case could not affect the legal operation of the deed, as the community character of the property would not be changed. This was intended to refer, perhaps, to cases where the motives of the husband were not divulged. But if the rule went further, and intended to establish as a principle, that in all cases a purchase with community money (though the deed be in the name of the wife) and irrespective of the declared motives of thus taking the deed, should be for the community, it must be regarded as modified by the rules and principles expressed in this Opinion. There is no error in the judgment, and it is affirmed.

Judgment affirmed.