JOSEPH JOHNSON ET AL. v. THOMAS R. BURFORD.

1. The act of August 13, 1856, authorizing the surviving husband, upon filing an inventory of community property, to administer it, did not affect rights which had vested prior to its passage.

2. The filing of such inventory of community property, in cases where the death occurred prior to the passage of said act, conferred no power upon the surviving husband.

3. In a suit by an assignee of the surviving husband, it is error to give in evidence the deed to the deceased wife for the land, to trace title to common source, unless it be shown that the property was community property.

4. The presumption is, that property acquired during coverture is community property; and that land purchased with such property, and the deed taken in the name of the wife, remains community property; but such presumption may be removed, by proving that the husband declared at the time that his intention in taking the deed in his wife's name was to make the land her property.

5. Property bought by the wife with her own earnings is community, unless it be shown that it was the intent of the husband to give her the proceeds of her earnings; in which case property so purchased would be the wife's separate property.

APPEAL from Jefferson. Tried below before the Hon. Wm. Chambers.

Appellee, Thomas R. Burford, brought trespass to try title against Joseph and Ben. Johnson, for sixty acres of land, part of the homestead of John McGaffey, deceased, and which land, in partition of said estate, had been set apart to Sarah McGaffey. Burford claimed by deed from Ben. Johnson to John Stamps; James O. Stamps, administrator of John Stamps, to E. F. Ewing, and from Ewing to plaintiff.

Defendants pleaded not guilty; that they were the sons and heirs of Rachel Johnson, who died thirteenth of August, 1856; that the land was her separate property; that she purchased the land of Sarah McGaffey on November 5, 1853, and paid therefor with her own separate

property; and that Ben. Johnson, Stamps, etc., had notice.

By amended petition, the plaintiff alleged his purchase for nine hundred dollars, without notice of the claim of defendants; that defendants had induced plaintiff to buy, alleging the title to be in Stamps, and so were estopped; that said property was the community property of Ben. and Rachel Johnson, and that after her death Ben. Johnson filed an inventory of the common property as required by law; and being by law so authorized to sell, had sold said land for its full value to said John Stamps.

Defendants amended, setting out the same facts, and again averred that Sarah McGaffey, the vendor, was the sister of Rachel E. Johnson, and let her have the land for her separate property at a low rate—one-half of its value; would have let no other person have it; that her husband, Ben Johnson, always declared and intended that said land was and should become and remain the sole property of Rachel Johnson, separate and apart—of all which notice, etc.

The plaintiffs read in evidence an inventory and appraisement of the community property belonging to Ben. Johnson, Sr., and his wife, Rachel, which included the land in controversy; a deed from Sarah McGaffey to Rachel Johnson; deed from Ben. Johnson, surviving husband of said Rachel, to Stamps; deed from administrator of Stamps to Ewing, and from Ewing to plaintiff; and proved by several witnesses declarations of Mrs. Rachel Johnson as to her separate property, but which property was not paid for the land; that some of the payment for the land was community.

Defendants showed that Mrs. Rachel Johnson was a shrewd managing woman; made the contract for purchase; traded in butter, eggs, vegetables, etc., on her own account.

The judge charged the jury, among other things:

"The earnings of husband and wife are community property, and the husband has control of it without the consent or concurrence of the wife. And if the jury believe from the evidence that Mrs. Johnson earned by her labor the money that purchased the land in controversy, and the deed was made in her name, the land so acquired was the community property of Benjamin and Rachel Johnson, and during her lifetime he could have sold it. * * * And after her death, after filing in the county court an inventory of the common property of himself and wife in the manner required by law—and I charge the jury that the inventory in this case was so filed—he could lawfully sell said land, and by warranty deed bind his heirs; and though by doing so he may have sold the interest of his wife's children in said land, they are bound by the deed of their father, and must look to their father for the loss or injury done to them by his act.

"If the jury believe the land was paid for by the separate money or funds of Mrs. Johnson, then the jury will find for the defendants."

Verdict and judgment for plaintiff. The defendants appealed.

*Wharton Branch*, for appellant.—Parol evidence is admissible to show who paid the purchase money, and even if the land in controversy was partially paid for with community funds, and the deed being in the name of Rachel Johnson, the wife, the presumption that the land became the community property to any extent may be rebutted by parol proof of the declarations of the husband, made at the time, that he intended the property to become the separate estate of the wife. (Higgins v. Johnson, 20 Texas, 389, *et seq.*; Dunham v. Chatham, 21

Texas, 244; Story v. Marshall, 24 Texas, 307; Pas. Dig., Note 1049.)

The court erred in charging that the pretended inventory of Benjamin Johnson, Sr., was a compliance with the law (see Pas. Dig., Art. 4646, *et seq.*); and that as to his having power to sell the deceased wife's interest in said land, even if it be common property, to show that the charge is right in the teeth of the law, the appellate court is respectfully referred to Wilkinson v. Wilkinson, 20 Texas, 237, which says that "upon the naked fact that the land sued for by the heirs of the wife was community property at the time of her decease, the heirs are entitled to recover; if there is any equity to defeat such recovery, it must be set up by the defendants." How much more applicable in this case where the heirs are sued, and the plaintiff compelled to recover on the strength of his title. (Wilkinson v. Wilkinson, 20 Texas, 244, 245.)

At the death of Mrs. Rachel Johnson, the one-half of the community property became vested in her children. (Pas. Dig., Art. 4642.) She died thirteen days before the passage of the act supplementary to act of March 13, 1848, entitled "An act better defining the marital rights of parties," approved August 26, 1856. And the rights of her children as heirs were as firmly vested as if she had been dead thirteen years. As the law stood at her death, had there been community debts, the only mode of settling up her estate was by administration; but there were no debts, and as her estate had vested in her heirs subject to debts, it had all vested. Had there been any need to settle up her estate, the remedy which was passed thirteen days after her death, it had been decided, would apply, but only as a remedy to supply the place of the more expensive mode by administration. (See Sossaman v. Powell, 21 Texas, 666, 667; also Walker v. Howard, 34 Texas, 478, *et seq.*) The "remainder" of community

property is all that is vested. That simply means all that is left after the community debts are paid; and as to that part of such estate not vested, it was competent and proper for the Legislature to provide a mode for paying it out to creditors at as little cost as possible to such estate. But it is beyond the power of the Legislature of any State to pass a law that will take away a vested right of the citizen. (Con. U. S., Art. 1, Sec. 10; Brightly's Dig., 6; Pas. Dig., 10, Notes 56, 61.)

The act of twenty-sixth of August, 1856, is merely a remedy enabling the survivor, by paying off the community debts, to ascertain with certainty the amount of property which had vested by the death of the marital partner in her heirs, and it is only to that extent, if at all, that the act passed thirteen days after Mrs. Johnson's death could apply to her estate. Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alterations do not impair the obligation of a contract or affect a vested right; but if that effect be produced it is immaterial whether it be done by acting on the remedy or directly on the contract itself. (Bronson v. Kinzie, 1 How., 316; Green v. Biddle, 8 Wh., 1, 75; McCracken v. Hayward, 2 How., 608; U. S. v. Conway, Hemp., 313; Johnson v. Bond, Id., 533, 536; Erie & N. E. R. R. Co. v. Casey, 2 Casey, 287; Evans v. Eaton, Pet. C. C., 323; 14 How., 78.) Our constitution then in force contained a provision similar to that of the United States. (See Pasch. Dig., p. 49, Sec. 14, Note 168; Hamilton v. Flinn, 21 Texas, 716; De Cordova v. City of Galveston, 4 Texas, 470.) Mrs. Johnson's estate was not subject to administration; and as far as a final sale of the property would be involved, the act of August 26, 1856, did not confer upon her survivor any authority to sell for any purpose for which it could not be sold under the law regulating administrations.

*Moore & Shelley*, for appellee.—The material and substantial questions which are presented by the record, and to which, as it is thought, the assignments of error may be referred, are as follows :

I.   What title passed by the conveyance of Benjamin Johnson, Sr., to Stamps ?

II.   Are the appellants estopped by their conduct, inducing the appellee to purchase the land from Ewing, who held the Stamps title, from asserting any title in themselves by inheritance from their mother, Rachel Johnson, deceased ?

We submit that the first question is not now an open one, having been settled in the case of Sossaman v. Powell, 21 Texas, 666.

It is claimed by appellants that Mrs. Johnson dying on the 13th of August, 1856, thirteen days prior to the passage of the act of the 26th of the same month and year, authorizing the survivor of the marital partnership to continue the management of the community estate, her interest in the community had vested in her heirs, and could not be affected by the provisions of the latter act.

In Sossaman v. Powell (referred to above) this precise question is decided, and, we submit, correctly.   The right of the heir to the property of the ancestor is qualified and limited.   It attaches absolutely to nothing until the estate subject to distribution is ascertained.   (Walker v. Howard, 34 Texas, 512, affirming Burleson v. Burleson, 28 Texas, 383.)

The estate of Rachel Johnson in the community was subject to be administered as provided by the law aforetime at the passage of the act of August 26, 1856, and by that act the control and disposition of the community was only continued in the surviving marital partner.

The appellants had received all of their interest in their mother's property, both separate and community; and if

they have not, it does not appear that there is not yet in the possession of their father, Benjamin Johnson, Sr., property amply sufficient to satisfy their legal rights. (Burleson v. Burleson, 28 Texas, 383.) From the testimony of Benjamin Johnson, Sr., it appears that he had divided off to his children some of the community property, and that they had an interest in the homestead which he (the witness) then occupied. He had, on the first of February, 1860, as the surving husband of Rachel Johnson, sold and conveyed to John Stamps the land in controversy, for the consideration of $1250 paid to him.

In conclusion, upon the question as to his right to make the sale and that the title passed to Stamps, it is submitted that the authorities above referred to render further remarks unneccessary.

WALKER, J.—Thos. R. Burford brought this action to recover possession of sixty acres of land which the appellants claim by descent from their mother, Rachel Johnson, who was the wife of Benjamin Johnson, Sr.

Mrs. Johnson died on the 13th of August, 1856, thirteen days before the passage of the act authorizing the surviving partner to file an inventory and sell and administer community property.

The rights of the appellants are not affected by this act if the land in controversy is to be regarded as community property, which is a contested point in this case. (See Magee & Gogle v. Rice et al., May 6, 1872, unpublished.)

The appellants claim also to be the assignees of their co-heirs.

This land was purchased from Sarah McGaffey, the sister of Mrs. Johnson, to whom the deed was made on the 25th day of November, 1853.

The plaintiff in the court below offered in evidence this deed in order to deraign title from a common source.

This was improper, unless it be clearly shown that the land was community property, belonging to Benjamin and Rachel Johnson.

If this be not shown, there is no privity of title between the parties; nor does the appellee claim under the deed to Rachel Johnson, but through a deed from Benjamin Johnson to John Stamps.

John Stamps having died, in the settlement of his estate the land was sold to one Ewing, from whom Burford purchased.

The general rule of our law is, that where property is purchased during the connubial partnership, though the title be taken to one of the partners, it is nevertheless community property.

But the court say, in Higgins v. Johnson's Heirs, 20 Texas, 389: "Where land is purchased with the funds of the community, and the deed is taken in the name of the wife, the presumption is that the land remains community property; but such presumption may be rebutted by proof that the husband declared at the time that his intention in taking the deed in his wife's name was to make the land her separate property. In such cases the transaction operates as a gift from the husband to the wife." Dunham v. Chatham, 21 Texas, 244; Story v. Marshall, 24 Texas, 307, lay down the same doctrine.

Though the wife, by her superior management, economy and thrift, may have raised the money to pay for this land, it would nevertheless be community property unless it be shown that it was the intention of the husband to give the wife the proceeds of her own earnings, to be invested in this land, and then the title taken to her would operate as a gift.

For the reasons given, this case must be reversed and the cause remanded.

REVERSED AND REMANDED.