MORRISON & HART, EX'RS, v. JOHN D. CLARK ET AL.

(Case No. 2335.)

1. SEPARATE PROPERTY OF THE WIFE.—Property conveyed to the wife during coverture, and limited by the terms of the deed to her sole and separate use, becomes the separate property of the wife, and this whether the consideration paid for its acquisition was with separate or community funds. In such case the intention to make such property the separate property of the wife is apparent on the face of the deed, charging all who have knowledge of its existence with notice.

2. FRAUD — SEPARATE PROPERTY OF THE WIFE.— A gift from the husband to the wife, made at a time when the husband has abundant property to satisfy the claims of creditors, is not void as to them; not will such a settlement of property be affected by the subsequent inability of the husband, through misfortune, to satisfy the claims of former creditors.

3. RES ADJUDICATA.— See opinion for facts under which the plea of res adjudicata was a proper defense.

APPEAL from Navarro. Tried below before the Hon. Francis P. Wood.

Suit brought in the district court of Navarro county on March 26, 1873, by the appellants against John D. Clark and Margaret Gilliam.

The petition avers that on February 22, 1871, plaintiffs recovered a judgment in the district court of Montgomery county against Margaret, as surviving wife of William L. Gilliam, and others, for $2,507.94, etc.   On the 8th of June, 1871, they recovered in the same court a judgment against the same Margaret for $2,654.80, etc., these judgments to be made and levied of the community property in the hands of said Margaret, of herself and her deceased husband.   It was averred that Margaret, with intent to defraud them, sold and conveyed to John D. Clark the lands known as Byrdstone, in Navarro county, which they say was community property at the death of Gilliam, and liable for community debts, and that Clark knew it, but confederated with Margaret to defraud them; that he had knowledge of the existence of the community debts, and of the pendency of the suits in which the judgments were rendered.   It was further averred that Gilliam died in Navarro county in 1864, intestate, and that there has been no administration on his estate.

They prayed for judgment that Byrdstone be sold as under execution to satisfy their judgments, etc.

By an amended petition, it was alleged that Margaret made the conveyance of Byrdstone to Clark's wife, and she being dead, her children, who are minors, were made parties.

The defendants demurred generally, and answered denying all charge of fraud, and averring that Francis C. Clark, under whom they claimed, was a purchaser in good faith of the land, and had paid for it, and also the general denial.

The case was submitted to a jury, who returned a verdict for the defendants.   Judgment was rendered for them, and this appeal is prosecuted therefrom.

A succinct statement of the material testimony offered upon the trial will show what the real controversy was between the parties.   It was shown that Wm. Gilliam

and Margaret, husband and wife, emigrated to this country prior to September, 1864. In September, 1864, William died in Navarro county, where he then resided, leaving Margaret, his wife, surviving, and no children. On the 7th of November, 1864, Margaret conveyed to Mrs. Haden certain lands in Navarro county. These lands were the same conveyed to Margaret, *to her, and her only sole use and benefit,* by Fisher and wife on the *11th of September, 1863.* The consideration for this conveyance from Margaret to Mrs. Haden was the conveyance on the same day by Haden and wife to Margaret of the Byrdstone place in Navarro county.

On the 24th of October, 1867, Margaret conveyed the Byrdstone place to Fannie C. Clark for the consideration expressed of $1,000, and Mrs. Gilliam, who was examined for plaintiff, testified she had received payment for it from J. D. Clark in 1867 and 1868, and perhaps some of it in 1869.

The transcript of the judgments in Montgomery county district court were read. The suits there were filed in February, 1866, by Morris and others, executors, against Margaret Gilliam and others, upon a cause of action originating in 1869. The petitioners allege the death of Gilliam in October, 1864, intestate, without children, leaving a large amount of community property, of the value of $50,000, to which Margaret was entitled; that there was no administration on Gilliam's estate; that she had come into possession of the community property, and that she held and claimed other property of the value of $5,000, by gift from her husband, after the cause of action arose. Judgment was prayed for a sale of the community property and that given to her, etc., "mediately or immediately by Wm. Gilliam."

The judgments were against Margaret Gilliam, surviving spouse of William Gilliam, deceased, for the amounts as stated heretofore, and that execution issue against her.

to be levied out of the community property of herself and the said William at the time of his death, and that has since or may hereafter come to her hands.   No personal judgment was rendered against her, nor is any mention made in the decree of the property *given* to her, nor any specific property described.

The consideration paid for the lands conveyed by Fisher and wife to Margaret's sole and separate use was community property of Margaret and William.

Mrs. Gilliam, testifying for the plaintiff, said the Byrdstone land was hers; that Mr. Gilliam traded for her the Fisher lands to Haden and wife for it.   In September, 1863, her husband owned a large amount of property, ten slaves, fifteen head of horses, hogs, cows and calves, several thousand dollars' worth of cash notes, and about $35,000 in Confederate money, which afterwards became worthless, and the Richland farm of three hundred and seventy-three acres.

Mrs. Haden, also testifying for the plaintiff, said, speaking of the purchase of Byrdstone: "Gilliam came with his wife as advisor, and assisted her in the trade for Byrdstone, stating at the same time that he came merely to advise her in the trade, and that he had no title or interest in the land traded."   The trade was made before Gilliam's death, but the conveyances were executed afterwards.

Davis testified to a conversation with Clark in 1868 or 1869, in which he notified Clark not to pay any more on the purchase money of Byrdstone; that he would hold it liable, if he could, for the payment of the judgments. Clark then said he had paid $500.

Clark himself testified that he had paid for the place; that he had a conversation with Davis about the suits, but thinks it was in 1869 or 1870.   He thought at the time his purchase money was but half paid, but on reference to his books afterwards, he found that $800 had been paid,

part money and part goods.   Until the conversation with Davis he did not know of the community indebtedness of Gilliam, or that Mrs. Gilliam was trying to defraud the creditors.

The defendants read a deed from Haden for Byrdstone to Fannie Clark, dated September, 1869.

It appears that Margaret Gilliam married one Carswell in 1866, but how long that coverture lasted does not anywhere appear.   Mrs. Gilliam in 1867 appears to have been living with her sister.   In 1867 and 1868 she rented the homestead of Gilliam and lived with her sister.   In 1868 she sold the homestead.   Carswell is not mentioned or made party in any of the suits against Margaret.   The record is silent as to whether he is living or dead, or abandoned his wife.   She appears to have acted at all times after the death of Gilliam as a *feme sole*.

*Wm. Croft*, for appellants.

I. Though the deed to the property was taken in the name of Mrs. Gilliam, it being acquired during coverture it was *prime facie* community property.   Tucker *v.* Case, 39 Tex., 102; Johnson *v.* Burford, id., 240; Parker *v.* Chance, 11 Tex., 518; Pasch. Dig., art. 6870, and cases cited.

II. This principle also applies to the deed taken by Clark in the name of his wife.   Byrdstone became the community property of Clark and wife by virtue of the deed to his wife, and even if it had become her separate property, the property was affected by the knowledge of Clark, who in that case acted as his agent.

*N. H. & J. R. Davis*, also for appellants.

I. By a sale of her community interest (half if children, all if childless), the surviving wife could not deprive the probate court of jurisdiction, nor could she defeat the rights of creditors.   Her vendee would take the estate

subject to those rights and burdened with those charges. Mitchell *v.* Dewitt, 20 Tex., 299. On the death of W. L. Gilliam his survivor could not defeat the right of creditors by selling to Clark. 20 Tex., 299.

II. The surviving wife . . . may be sued for the debts against the community, but as she is proceeded against in a fiduciary capacity, the action being more in the nature of a proceeding *in rem* than *in personam,* the judgment should be that the amount be made of community estate in her hands. Tucker *v.* Brackette, 18 Tex., 339. And these judgments may be, for executors, the most usual and customary remedy. Id.; also 25 Tex. Sup., 196; 36 Tex., 22; 34 Tex., 478; 28 Tex., 49; 13 Tex., 285.

III. That "Byrdstone" is community property, we refer to the evidence and to the following authorities: Pasch. Dig., art. 4642, note 1049; 30 Tex., 178–9; 16 Tex., 323; 11 Tex., 518; 31 Tex., 405; 27 Tex., 459; 26 Tex., 459; 26 Tex., 329; 20 Tex., 394. A statute of 1848 (Pasch. Dig., 1373, § 122) enacts that, whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law; but, with the exception of such as may be exempted by law from the payments of debts, shall be liable and subject in their hands to the payment of the debts of the intestate. That the heirs must pay the debts of the ancestor out of the property inherited from him, if not paid by the administrator, is not now an open question.

*Winkler & Morris,* for appellees.

QUINAN, J. COM. APP.— The case presents as the important question involved, whether Byrdstone was the community property of William Gilliam and Margaret, his wife, or whether it was her separate property at the death of William.

The conveyance of the property to Margaret after his death, *prima facie* renders it her separate property. She

was then a single woman. Its acquisition in exchange for property which was conveyed to Margaret in William's life-time, and to "her sole and separate use," still further tends to establish that fact, that it was her separate property.

But it is contended that as the property which was paid as the consideration to Fisher and wife in 1863 for the lands conveyed to Margaret's sole and separate use was community property, that the property acquired must also be held community.

This position is not, in our judgment, tenable. It is unquestionably true that a conveyance of land made, whether to the husband or wife, or to both, is presumed to be community if made during coverture, and especially if the consideration paid is community; but it is not true that this presumption exists where, as in the present case, the conveyance is made to the sole and separate use of the wife. In such case the property, whether paid for by the separate means of the husband or the community funds, or the separate estate of the wife, becomes the separate property of the wife. And where the separate means of the husband or the community effects make up the consideration, and the conveyance does not, as in this case it does, contain anything to indicate that it was intended as a gift, it may be shown by parol testimony that the deed was taken in the name of the wife by direction of the husband with the intention of making it her separate estate. Higgins v. Johnson, 20 Tex., 395.

There is no necessity of such proof here. The intention that the property should be the separate property of the wife is stamped upon the face of the deed, and all the world has notice of the fact. Kirk v. Navigation Co., 49 Tex., 215.

If, however, it were necessary to establish otherwise that the intention in taking the deeds from Fisher and wife to Margaret was to make a gift from her husband to

her, and that the property should be her separate estate, the proof is here in the record. It is declared in the plaintiffs' pleadings that Margaret held $5,000 worth of property as a gift from her husband, and no other gift than this of the land from Fisher is pretended. Margaret proves it by her testimony, and Mrs. Haden testifies to Gilliam's statement that the property was Margaret's when the trade for the Byrdstone lands was being made, and that he claimed no interest in it.

We conclude that Byrdstone was the separate property of Margaret; that it formed no part of the estate of William Gilliam, and was not subject to administration as such.

But it is said that the Fisher property, being a gift to Margaret after the obligations upon which the judgments in favor of plaintiffs were rendered were incurred, that as a voluntary conveyance of property it is void as to them. It may well be questioned whether this can be set up in this suit. There is no direct attack made here upon the deed from Fisher and wife as fraudulent. There is no allegation in plaintiffs' petition respecting it. But it appears from the petitions in the suits wherein judgment was rendered against Mrs. Gilliam, that it was put in issue there, whether the plaintiffs should have a decree for the satisfaction of their debt out of the property held by Margaret as a gift from her husband, and plaintiffs' failure to obtain it. We think that having failed in that suit, they are precluded from again contesting the question whether this property is liable.

But a gift from the husband to the wife is not necessarily fraudulent and void as to existing creditors. It might be a badge of fraud, a circumstance to be considered in determining whether the intent was fraudulent, if it were shown that he was then heavily in debt. But it does not follow that because a man may be indebted to an inconsiderable, or even a considerable amount at the time,

that he cannot settle a part of his property upon his wife or children, provided he retains an ample amount of property to liquidate his just debts. Van Bibber v. Matthis, 52 Tex., 407.

Nor will that settlement be affected because it may turn out afterwards from accident or ill-fortune, that his property may perish or be swept away. Perkins v. Perkins, 1 Tenn. Ch. Rep., 543, Cooper, Chancellor. Here it is abundantly shown that Gilliam was in prosperous circumstances in September, 1863. He had lands and slaves, and horses and cattle. He had several thousand dollars in cash notes and $35,000 in Confederate money, which at that time was of considerable value. At his death the plaintiff alleges he left property to the value of $50,000, and of debts, except that to plaintiff, there is no proof to any considerable amount. Is the gift to his wife of this Fisher property to be held fraudulent and void as against these creditors because it has followed from the fortune of war that slaves have been liberated and ceased to be property, or that wealth has taken to itself wings; that his cash notes have become trash, and his Confederate bonds but rags? The gift to his wife in the then condition of the country, if it was intended as some provision for her out of his large estate against the calamities which might result from the conflict in which our people were then engaged, was not alone a prudent, but a meritorious act, and there is no rule of equity or good conscience which forbids us to uphold it. The property which was purchased by Margaret with this donation we believe she is entitled to claim and hold, unaffected by any indebtedness of her deceased husband, and free of the claims of his creditors, as it surely is unaffected by any fraudulent intent or device to hinder, delay or defeat them. Sherman v. Hogland, 54 Ind., 578; Chambers v. Sallie, 29 Ark., 407; Brown v. Spicey, 53 Geo., 155; Emerson v. Bemis, 69 Ill., 537.

The verdict of the jury for the defendants is fully warranted by the testimony, and in our judgment should not be disturbed, unless there has been some error committed in the rulings of the court or the instructions given them calculated to work the plaintiff injury.

Exceptions were taken at the trial to the rejection by the court of some of the answers of Margaret to interrogatories propounded to her by plaintiff. They were objected to as irrelevant. The appellants here do not point out in what respect they were relevant, and it is certain that they have not been injured by their rejection. We have carefully considered the answers, and where they are not mere repetitions of her previous answers which were read, they are devoted to a statement of her present condition, and the disposition she had made of the community property since her husband's death. In the view we have taken of the case, the inquiry into these subjects was immaterial and irrelevant. If the Byrdstone property was her separate property, it was no concern of her vendees what may have been done with the community property which came to her hands.

There are many assignments of error to the action of the court in giving and refusing instructions to the jury. It would be a tedious and unprofitable labor to examine each objection. For the most part the instructions relate to the powers and duties of the surviving wife as respects the community property and its administration. It seems to have been assumed by the appellants, and indeed also by the court, that the conveyance by Fisher and wife to Margaret Gilliam, being for a consideration springing from the community, the property, although limited to her sole and only use, became community, and that acquired with it became community also. This, we have seen, was an erroneous view of the law. But the charge given and the charges asked were predicated upon this assumption. They have consequently but little relevancy

to the true issue in controversy. The controlling fact in the case is, that the property was the separate estate of Mrs. Gilliam. That is decisive of the contest, and we would not be warranted in raising questions upon the rules governing surviving wives in regard to the community property, when such rules have nothing to do with the case in hand. It is enough to say that neither in the instructions given or refused has the plaintiff suffered any injury of which he can complain. Indeed, though they are upon questions merely abstract, they are very generally correct; and where erroneous, the error has been on the plaintiff's side.

On the whole case, and on whatever theory founded, it is not made to appear to us that the verdict of the jury is clearly wrong. On the contrary, we believe it to be right, and therefore the judgment ought to be affirmed.

AFFIRMED.

[Opinion delivered October 25, 1881.]