**HENRY S. MILLER COMPANY,**
**Petitioner,**

v.

**Lon EVANS, Sheriff of Tarrant County, Texas et al., Respondents.**

**No. B–1535.**

Supreme Court of Texas.

March 18, 1970.

Rehearing Denied April 15, 1970.

Akin, Steinberg & Stanford, Paul H. Stanford and Richard W. Luerssen, Dallas, for petitioner.

Brown, Herman, Scott, Young & Dean, Beale Dean and J. Shelby Sharpe, Fort Worth, for respondents.

McGEE, Justice.

The Henry S. Miller Company brought this action against Lon Evans, Sheriff of Tarrant County, and against the surety on Evans' official bond, to collect money damages under Article 3825,[1] for Evans' failure to levy execution on Amanda Street property in Fort Worth, Texas. Trial was had before the court without a jury, and judgment was rendered in favor of the Miller Company. The Court of Civil Appeals reversed and remanded the cause to the trial court. 440 S.W.2d 317. We reverse the judgment of the Court of Civil Appeals and render judgment for petitioner for nominal damages in the amount of $1.00, plus costs of court.

The Henry S. Miller Company (hereinafter referred to as Miller) claims that this property is a part of the community estate of Joseph and Nancy Shoaf, while Lon Evans (hereinafter referred to as Sheriff) claims that this property is the separate property of Nancy J. Shoaf, and therefore Miller suffered no damages as a result of his failure to levy execution.

On December 17, 1959, Elsie Nadolski conveyed this Amanda Street property to Nancy J. Shoaf, the wife of Joseph Shoaf.

The deed was recorded on January 14, 1960. It recited a consideration of $1.00

---

1. All statutes are referred to by the article number under which they appear in Vernon's Revised Texas Civil Statutes Annotated.

and a vendor's lien note for $8,000.00, paid and to be paid out of Nancy Shoaf's "sole and separate estate," and that this property was conveyed to her as her "sole and separate estate."

Joseph Shoaf, an experienced real estate dealer and co-signer of this note, handled all of the negotiations involved in the Nadolski transaction. Nancy Shoaf did not participate in any way in these negotiations.

On February 2, 1964, more than four years *subsequent* to the execution of the deed to Nancy Shoaf, Joseph Shoaf executed a note payable to Miller in the principal sum of $37,500.00. The sole collateral for Joseph Shoaf's note to Miller, as stated therein, was certain property located in Dallas, Texas. The lien securing payment of this note was subordinate and inferior to two other items of indebtedness; one in the principal sum of $1,150,000.00, and the other in the principal sum of $137,500.00. Upon default in this note on November 16, 1965, Miller obtained a judgment against Joseph Shoaf in the amount of $35,036.00.

On the 4th day of February, 1966, Joseph Shoaf and his wife, Nancy, were divorced. It was recited in the divorce decree, which was introduced into evidence over the Sheriff's objection, that:

"It further appearing to the Court that Plaintiff and Defendant own certain property as Community property, and the parties having announced to the Court in open session that they have voluntarily agreed upon a division and partition of said property, and the Court being of the opinion that such agreed division and partition is just, and right, and equitable, and it is hereby expressly approved by the Court in accordance with its terms."

By further provision in the decree, the Amanda Street property was awarded to Nancy Shoaf as her separate property. On March 22, 1966, Nancy Shoaf conveyed this property to her mother as a gift.

The parol testimony of Joseph Shoaf, admitted in evidence over the Sheriff's objection, was, in substance, as follows: that he was an experienced real estate dealer; that the "property was sold to me," but the title was taken in his wife's name because he was heavily in debt, and "if something should happen to me, this was something that could provide an income"; that he co-signed the vendor's lien note and paid the $300.00 down payment and some utility bills and taxes; that he collected the rent payments and gave them to his wife, and she deposited them in her separate account out of which she made all of the mortgage payments; that he told the attorney who prepared the deed that "he wanted title to the property to be put in her name in case anything should happen," but "told him I wanted it to be community property"; and that he wanted to fix it so that the creditors could not get the title away in case something happened.

This proceeding is controlled by Article 3825, which provides as follows:

"Should an officer fail or refuse to levy upon or sell any property subject to execution, when the same might have been done, he and his sureties shall be liable to the party entitled to receive the money collected on such execution for the full amount of the debt, interest and costs, to be recovered on motion before the court from which said execution issued, five (5) days previous notice thereof being given to said officer and his sureties."

We hold Miller's pleadings and proof to be sufficient under Article 3825, to show: (1) that Miller had recovered judgment against Joseph Shoaf; (2) that the execution and order of sale had been issued to the Sheriff; (3) that the execution had been delivered to the Sheriff with the request that he levy upon the Amanda Street property in Fort Worth, Texas; (4) that the Sheriff failed and refused to levy thereon; and (5) that Miller's judgment was unpaid and unsatisfied.

It is the sixth requirement under Article 3825 that gave rise to the basic dispute in this case, viz., that judgment creditor Miller must allege and prove that the property upon which he requested the levy of execution (the Amanda Street property) was community property and, therefore, *subject to* execution. Miller did allege that the property was the community property of Nancy and Joseph Shoaf, because it had been acquired during coverture. Had testimony been introduced to that effect and had there been no other evidence to be considered, Miller would have alleged and proved a prima facie case under Article 3825. Smothers v. Field, Thayer & Co., 65 Tex. 435 (1886); Smith v. Perry, 18 Tex. 510 (1857); Holterman v. Caffall, 79 S. W.2d 178 (Tex.Civ.App.–San Antonio 1935, no writ); Blanscet v. Palo Duro Furniture Co., 68 S.W.2d 527 (Tex.Civ.App.–Amarillo 1934, no writ); B. F. Goodrich Rubber Co. v. Valley Plumbing & Supply Co., 267 S. W. 1036 (Tex.Civ.App.–Waco 1924, no writ); 52 Tex.Jur.2d Sheriffs and Constables, Sec. 17 (1964); 11 Texas L.Rev. 251 (1932).

■ Before Miller offered evidence to show that the property was acquired during coverture, which would give rise to the presumption that this was community property, the Sheriff introduced into evidence the deed to Nancy Shoaf containing the recitals to the effect that the land was conveyed to her as her sole and separate estate, and that the consideration was paid and to be paid out of her separate estate. As a result of the recitals in the deed, no presumption of community property existed. By the introduction of the deed containing these recitals into evidence, the Sheriff established a prima facie defense that the Amanda Street property was the separate property of the wife, Nancy Shoaf, and *not subject to execution*; Article 4616.[2]

■ Property acquired during marriage acquires its status of separate or community at the time of its acquisition. Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529 (1940).

As stated in Speer, Marital Rights in Texas, Sec. 153 (4th Ed. 1961): "The act of the spouses in taking a conveyance of property in the name of the wife, limiting the title to her separate use, unmistakably evidences an intention that the same shall belong to her separate estate."

■ That the recitals of the deed constitute prima facie evidence of a gift, and that there is no presumption of community property in this case, is demonstrated by the opinion in Morrison & Hart, Ex'rs v. Clark, 55 Tex. 437, 443 (1881), as follows:

"It is unquestionably true that a conveyance of land made, whether to the husband or wife, or both, is presumed to be community if made during coverture, and especially if the consideration paid is community; but it is not true that this presumption exists where, as in the present case, the conveyance is made to the sole and separate use of the wife. And where the separate means of the husband or the community effects make up the consideration, and, the conveyance does not, as in this case it does, contain anything to indicate that it was intended as a gift, it may be shown by parol evidence that the deed was taken in the name of the wife by direction of the husband with the intention of making it her separate estate * * *. There is no necessity of such proof here. The intention that the property should be the separate property of the wife is stamped upon the face of the deed, and all of the world has notice of that fact. Kirk v. [Houston Direct] Navigation Co., 49 Tex. 213 [1878]."

2. Article 4616 reads as follows:
"Wife's separate property protected
"Neither the separate property of the wife, her personal earnings, nor the rev-

enue from her separate property shall be subject to the payment of debts contracted by the husband nor claims arising out of the torts of the husband."

It is similarly stated in Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825, 826 (1900) that:

"Another class of cases has arisen in which third persons have conveyed property to the wife during marriage by deed showing a purpose to make it her separate estate, either by directly so stating, or by a recitation that it is conveyed as a gift, or that the consideration was paid out of her separate estate. McCutchen v. Purinton, 84 Tex. 603, 19 S.W. 710 [1892]; Morrison v. Clark, 55 Tex. 437 [1881]. In these cases it was held that the purpose expressed in the deeds to vest title in the wife separately was prima facie evidence that it became her separate property, even against creditors of the husband or of the community; the opinions, of course, conceding the right of creditors to attack the conveyance in the same way in which they might attack any conveyance from husband to wife."

The trial court held that the Amanda Street property was community property and subject to execution, and rendered judgment for Miller for the full amount of its prior judgment, together with interest and costs.

In the Court of Civil Appeals the appellant Sheriff's first point of error (and essentially the thirteen points which follow, dealing with the admissibility of Miller's evidence) stated:

"The undisputed evidence properly before the trial court conclusively established, *as a matter of law* that the property upon which execution was sought by appellee on its judgment against Joseph Shoaf was the separate property of Nancy J. Shoaf, which is *not subject to execution*, and therefore, the trial court erred in finding it community property and in *failing to render judgment*." (Emphasis by this Court.)

■ The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause, holding that the trial

court erred in admitting parol evidence to contradict the recitals in the deed in the absence of pleadings by Miller alleging that the "transaction was intended as a fraud upon creditors, or that there was a resulting trust for their benefit."

We concur with the holding of the Court of Civil Appeals that the extrinsic evidence offered to contradict the express recitals in the deed that the property was to be the separate property of Nancy Shoaf was inadmissible. However, there is no basis for remanding this cause, and the Court of Civil Appeals erred in so doing.

Under this record, Miller was unable to introduce extrinsic evidence (*e. g.,* payment by the community and subjective intention of the parties) which would establish a resulting trust, and in turn, contradict the express recitals in the deed to the effect that this was the separate property of Nancy Shoaf, without first tendering competent evidence that there had been fraud, accident and mistake in the insertion of the recitals in the deed. Messer v. Johnson, 422 S.W.2d 908 (Tex.Sup.1968); Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777 (1952); Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900 (1955); McKivett v. McKivett, 123 Tex. 298, 70 S.W.2d 694 (1934); Kahn v. Kahn, supra; Lott v. Kaiser, 61 Tex. 665 (1884); Morrison & Hart Ex'rs v. Clark, supra.

■ Nancy Shoaf did not participate in the negotiations with the attorney for Elsie Nadolski in the purchase of this property. Joseph Shoaf, an experienced real estate dealer, handled all of these negotiations and co-signed the note. As such, he had knowledge of the terms of the deed and in law would be treated as a party to the transaction. There was no fraud, accident or mistake in the insertion of these recitals in the deed. We consider Lott v. Kaiser, supra, to be controlling. It is therein stated:

"The instrument was not executed through accident. The word 'accident,' as used as a ground for the exercise of

equity jurisdiction, is thus defined by a distinguished elementary writer: 'Accident is an unforeseen and unexpected event, occurring externally to the party affected by it, *and of which his own agency is not the proximate cause,* whereby, contrary to his own intention and wish, he loses some legal right or becomes subject to some legal liability, and another acquires a corresponding legal right, which it would be a violation of good conscience for the latter person, under the circumstances to retain. (Emphasis by the courts.) If the party's own agent is the proximate cause of the event, it is a mistake rather than an accident.' 2 Pomeroy's Equity, 823. Tested by this definition, which is sufficiently accurate, the instrument was not executed through accident; for the very thing which has occurred, i. e., the assertion of title under the deed was foreseen and could not in a legal sense have been unexpected; the execution of the deed, which was solely the act of its maker, was the proximate cause, the creation of the right which the grantees now assert.

"The same author thus defines the word 'mistake': 'Mistake, therefore, within the meaning of equity, and as the occasion of jurisdiction, is an erroneous mental condition, conception or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence, and resulting in some act or omission done or suffered erroneously by one or both the parties to a transaction, but without its erroneous character being intended or known at the time.' 2 Pomeroy's Equity, 839.

"Tested by this definition there was no mistake. The maker of the deed knew its contents at the time he executed it, and he also knew the legal effect of the language which it contained; *and if in either of these respects it was erroneous, in that it did not truly express the intention of the maker, that was known to him before he executed it; and the failure to insert such words in the instru-ment as would make it express truly the intention of its maker,* when knowledge was brought home to him, that, as written, it did not do so, was negligence which takes from the transaction the element of mistake, either of law or fact." (Emphasis by this Court.)

We next consider the record to determine whether the deed to Nancy Shoaf was made in fraud of subsequent creditors.

Assuming the sufficiency of his pleadings, Miller nevertheless has been unable to produce evidence that the deed to Nancy Shoaf, executed and recorded four years prior to the origin of its claim and subsequent judgment, was made in fraud of subsequent creditors. The deed to Nancy Shoaf recited that the consideration was to be paid out of her "sole and separate estate," and that the property was conveyed to her as "her sole and separate estate." Under Article 6646, Miller is charged with knowledge of the recitals in the deed.

Miller has failed to show that in extending credit to Joseph Shoaf, it relied on the Amanda Street property as being community property. Absent this showing, Miller has not proven that the conveyance to Nancy Shoaf was in fraud of its debt. Article 6646; Quarles v. Eaton-Blewett Co., 249 S.W. 465 (Tex.Com.App.–1923, judgment adopted); Lewis v. Simon, 72 Tex. 470, 10 S.W. 554 (1889); Lehmberg v. Biverstein, 51 Tex. 457 (1879); De Garca v. Galvan, 55 Tex. 53 (1881); Van Bibber v. Mathis, 52 Tex. 406 (1880); 4 Lange, Texas Land Titles, Sec. 441 (1961). In fact, Miller's pleadings in the prior suit against Joseph Shoaf, containing the note upon which he obtained judgment, reflect that he took a third lien on Joseph Shoaf's property in *Dallas County,* subject to prior liens of $1,297,500.00. That note did not refer to the Amanda Street property in Tarrant County.

As stated in Lewis v. Simon, supra: "As a general rule, a subsequent creditor who acquired his claim with knowledge or

notice of the conveyance sought to be annulled, cannot attack it as fraudulent. * * * " This rule has been recognized in former decisions by this Court. Lehmberg v. Biberstein, supra; De Garca v. Galvan, supra; Van Bibber v. Mathis, supra. There are exceptions to this rule, but the instant case does not fall within any of them. For example, see Perry v. Brown, 76 S.W.2d 230 (Tex.Civ.App.–Waco 1934, no writ) to the effect that registration binds subsequent creditors in the absence of some fraudulent device practiced upon the subsequent creditor and participated in by the grantee in the deed, the effect of which causes the creditor not to examine the records.

The subsequent creditor knowing that the grantor has voluntarily parted with his property, we fail to see the device by which he can claim to have been defrauded.

In Quarles v. Eaton-Blewett Co., supra, the rule was clearly stated:

"The proper registration of a deed charges every one with notice of its execution and contents; and in the absence of some fraudulent device practiced upon a subsequent creditor, and participated in by the grantee in the deed, the effect of which is to cause the creditor not to examine the records, he is charged as a matter of law with notice of the deed and its contents and is in the same position as if he had actual knowledge of it. The effect of the holding in the two companion cases is that in order to defeat the effect of registration as notice to subsequent creditors there must be some affirmative misleading representation to them by the debtor, or some affirmative act of deception on his part which would be tantamount to an affirmative misrepresentation. The mere failure of the debtor to inform the creditor of the conveyance is in effect held not to constitute such fraudulent device as to defeat the effect of the registration as notice to the creditor, even though the latter was ignorant of the conveyance,

and the debtor had reason to believe that the creditor would not extend the credit if he knew the conveyance had been made. Under this holding the deed in question must be held valid * * *."

In addition to authorities cited above, see also, Clement v. First National Bank of Paris, Texas, 115 Tex. 342, 282 S.W. 558 (1926); Higgins v. Johnson's Heirs, 20 Tex. 389 (1857); Quarles v. Hardin, 249 S.W. 459 (Tex.Com.App.–1923); Watson v. Scales, 244 S.W.2d 366 (Tex.Civ.App.–Texarkana 1951, writ ref'd n. r. e.); Perry v. Brown, supra.

■ Miller contends that the judgment in the divorce action between Joseph and Nancy Shoaf, reciting that there was certain community property and that the parties had voluntarily agreed to a partition of the same, was a judicial determination that the Amanda Street property was community property and that any issue of whether the property is community property or separate property is res judicata. It is clear that the divorce decree would not be res judicata in this proceeding regarding Miller and the Sheriff, because neither of them was a party to the prior divorce action.

Having held that the Amanda Street property is the separate property of Nancy Shoaf by virtue of the recitals in the deed, we find that Miller suffered no damage as a result of the Sheriff's failure to levy on the Amanda Street property.

■ Under the provisions of Articles 3825 and 6873, the Sheriff is *required* to *execute all processes* directed to him by legal authority, whether the land is owned and possessed by the judgment debtor or another, and even though the levy might involve litigation. For a levy of execution on *land* will not subject the Sheriff to a suit for damages. Wilson v. Dearborn, 174 S.W. 296 (Tex.Civ.App.–Dallas 1915, no writ). (Emphasis added by this Court.) As stated in Harston v. Langston, 292 S. W. 648, 650 (Tex.Civ.App.–Austin 1927, no writ): "A sheriff is an officer of the

court, under a duty to execute process, [and] is not a tribunal to determine doubtful questions of fact * * *."

 Despite Miller's inability to prove damages, we hold the Sheriff liable for nominal damages in the sum of $1.00, and costs to Miller, for having failed and refused to levy a valid execution issued by lawful authority. Smith v. Perry, supra.

We reverse the judgments of the trial court and the Court of Civil Appeals, and render judgment that Henry S. Miller Company recover of and from Lon Evans, Sheriff of Tarrant County, and the surety on his official bond, Firemens Insurance Company of Newark, New Jersey, jointly and severally, nominal damages in the sum of $1.00 and all costs of court.