**In re Vance Cole CHESNUT, Debtor.**

**Mark T. Brown, et al., Appellants,**

**v.**

**Vance Cole Chesnut, Appellee.**

**No. 4:04–CV–342–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

July 1, 2004.

James M. Morrison, Jim Morrison & Associates, Fort Worth, TX, for Appellee.

Dennis Michael Lynn, Fort Worth, TX, pro se.

Case Admin Sup FW, Fort Worth, TX, pro se.

Tim Truman, Truman, Spicer & Oujesky, North Richland Hills, TX, pro se.

## MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

This action comes before the court as an appeal from a judgment in an adversary proceeding before the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, the Honorable Dennis Michael Lynn presiding. The court, having considered the briefs of appellants, Mark T. Brown and Templeton Mortgage Corporation, and appellee, Vance Cole Chesnut ("debtor"), the record on appeal, and applicable authorities, finds that the bankruptcy court's judgment should be reversed and that the case should be remanded for further proceedings consistent with this memorandum opinion and order.

## I.

### Jurisdiction

This is an appeal from a final judgment entered December 24, 2003, granting relief sought by debtor. This court's jurisdiction exists pursuant to 28 U.S.C. § 158(a).

## II.

### Underlying Proceedings

In 1996, when debtor was twenty-four years old, he married Jacqueline Chesnut ("Mrs. Chesnut"), who was then fifty years of age. Mrs. Chesnut had accumulated

Dennis O. Olson, Olson, Nicoud & Gueck, Dallas, TX, for Appellants.

assets over the course of prior marriages; debtor had no assets. In 1997, debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. Mrs. Chesnut did not join in the filing. Debtor received his discharge from that bankruptcy in December 2002.

While debtor's first bankruptcy was pending, Mrs. Chesnut acquired approximately 2.52 acres of land in Eastland County, Texas, (the "Property") by a deed reciting that the Property was being granted to her "as her sole and separate property and estate." Mrs. Chesnut signed a real estate lien note (the "note") reflecting that the Property was her separate property. And, a title policy was issued reflecting that the Property was Mrs. Chesnut's separate property. Thereafter, appellants [1] purchased the note and deed of trust from the seller of the Property. There is no evidence that when they made the purchase appellants had any knowledge of Mrs. Chesnut's marital status or that appellants had any reason to question the accuracy of the recitations in the deed, note, and title policy. Debtor did not have, and has never had, any recorded interest in the Property.

The note was not timely paid and, by letter dated December 23, 2002, appellants gave Mrs. Chesnut notice that the loan was in default and that its maturity would be accelerated if she failed to pay the arrearages on or before January 13, 2003. By letter dated January 13, 2003, Gary W. Corbin ("Corbin"), counsel for appellants, gave notice to Mrs. Chesnut that the note had been accelerated. By notice of acceleration and notice of substitute trustee sale, Mrs. Chesnut was informed that the Property would be sold at foreclosure sale on February 4, 2003.

On January 31, 2003, debtor filed his second Chapter 13 bankruptcy proceeding and gave notice of the filing to appellants. Debtor and his attorney, James M. Morrison ("Morrison"), talked to Corbin on several occasions prior to February 4, 2003, and informed him that debtor claimed a community property interest in the Property. Morrison faxed to Corbin and to appellants copies of a two-page voluntary petition filed by debtor.[2] Believing that the Property was Mrs. Chesnut's separate property, Corbin advised appellants to go forward with the foreclosure sale and they did so.

On June 16, 2003, debtor filed an adversary proceeding against appellants, alleging that they had wrongfully foreclosed on the Property in violation of the automatic stay. On August 5, 2003, the bankruptcy judge heard testimony on debtor's motion for sanctions for violation of the stay. At the conclusion of the hearing, the bankruptcy judge announced that he would try the case on the merits before deciding the sanctions issue. The trial took place on October 14, 2003. On November 6, 2003, the bankruptcy judge signed a memorandum opinion and, on December 23, 2003, a judgment sanctioning appellants for having willfully violated the automatic stay and ordering them to pay $10,000.00 into the registry of the court and to reconvey the Property to Mrs. Chesnut. Appellants timely filed their notice of appeal, having been granted an extension of time in which to do so.

---

**1.** For ease of reference, the court refers to appellants as owners of the lien at issue. Actually, Brown is the owner and Templeton Mortgage Corporation, a company controlled by Brown, is the servicer.

**2.** The petition reflected that Palo Pinto was the debtor's county of residence. Thus there was no issue about whether debtor then claimed the Property as homestead. And, in any event, no schedules were filed before the foreclosure.

## III.

### *Issues on Appeal*

Appellants present three issues on appeal. First, the bankruptcy court erred in holding that appellants willfully violated the automatic stay. Second, the bankruptcy court erred in holding that debtor held an interest in the Property. And, third, the bankruptcy court erred in failing to hold that debtor was estopped to claim an interest in the Property.

## IV.

### *Standard of Review*

■ To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to *de novo* review. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1252 (5th Cir.1986). Findings of fact, however, will not be set aside unless clearly erroneous. *Memphis–Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 783 F.2d 1283, 1287 (5th Cir.1986). A finding is clearly erroneous, although there is evidence to support it, when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* The mere fact that this court would have weighed the evidence differently if sitting as the trier of fact is not sufficient to set aside the bankruptcy court's order if that court's account of the evidence is plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## V.

### *Discussion*

The parties devote substantial attention in their briefs to issues that are not properly before the court. They assume that the bankruptcy court held that debtor owned a particular interest in the Property and that debtor was not estopped from claiming that interest. Instead, the bankruptcy court stated: "[W]hether the Property is part of Debtor's estate is a question of fact which must be adjudicated by a court." Tr. at 50.[3] But, he never made a finding on that issue.[4]

■ The bankruptcy court determined, without citing any authority, that the mêre fact that debtor gave notice of his bankruptcy filing and said that he claimed an interest in the Property was enough to stop the foreclosure sale. If that were the law, no one would be able to rely on chain of title to deal with real property in Texas. The bankruptcy court in effect ruled that property acquired during marriage is community property despite how it is titled. The inception of title rule is to the contrary: "Property acquired during marriage acquires its status of separate or community at the time of its acquisition." *Henry S. Miller Co. v. Evans,* 452 S.W.2d 426, 430 (Tex.1970). As the Texas Supreme Court has noted, "[t]he act of the spouses in taking a conveyance of property in the name of the wife, limiting the title to her separate use, unmistakably evidences an intention that the same shall belong to her separate estate." *Id.* Moreover, extrinsic evidence cannot be offered to contradict the express recitals in a

---

3. The court omits the extraneous leading zeros from the page numbers of the transcript.

4. Despite the recitation that the memorandum opinion "constitutes the court's findings of fact," tr. at 42, one would be hard-pressed to identify what facts were found. The opinion contains summations of testimony with the indication that neither debtor nor Mrs. Chesnut were credible witnesses.

deed without first tendering competent evidence that there was fraud, accident, or mistake in the insertion of the recitals in the deed. *Id.* at 431. There is no such evidence here.

■ At most, debtor may have a claim for economic contribution. As the bankruptcy court noted, such a claim does not create an ownership interest in property. TEX. FAM.CODE ANN. § 3.404(b) (Vernon Supp.2004). Thus, such a claim has no bearing on the existence of the automatic stay.

■ The bankruptcy judge was apparently disturbed by the fact that appellants neither sought relief from the stay nor sought retroactive approval of the sale.[5] Nevertheless, there could have been no violation of the automatic stay if the Property was not property of the debtor's estate. The evidence does not support, and would not support, a finding that the stay extended to the Property.

## VI.

### *Order*

For the reasons discussed herein,

The court ORDERS that the judgment at issue in this case be, and is hereby, reversed; that debtor take nothing on his adversary complaint the subject of this appeal; that such adversary complaint be, and is hereby, dismissed with prejudice; and, that this action be, and is hereby, remanded to the bankruptcy court for such further proceedings as are necessary to restore appellants to the position they

were in prior to entry of the December 24, 2003, judgment.

---

5. That the bankruptcy judge was ready to rule in favor of appellants if they but sought affirmative relief is plain from the face of the record. There seems to be no question that debtor engaged in fraudulent conduct during each of his bankruptcies and that he likely perjured himself during the hearings. At the very least, Mrs. Chesnut acquiesced, if not engaged, in fraudulent conduct herself. As the bankruptcy judge intimated, the filing of false schedules may prevent debtor from obtaining his discharge. *See Cadle Co. v. Mitchell (In re Mitchell)*, No. 03–10885, slip op., 2004 WL 1448041 (5th Cir. June 28, 2004). And, this would seem to be a case where more serious consequences should follow.