FILED

MAY 31 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )        BAP No.   CC-12-1061-KiDMk
                                    )
FANDA HEZAM FADEL,                  )        Bk. No.   RS 11-33453-MJ
                                    )
                    Debtor.         )
                                    )
_____)
                                    )
FANDA HEZAM FADEL,                  )
                                    )
                    Appellant,      )
                                    )
v.                                  )        **O P I N I O N**
                                    )
DCB UNITED LLC, TRUSTEE OF          )
THE EISENHOWER UDT 7-22-11,         )
                                    )
                                    )
                    Appellee.       )
_____)

Argued and Submitted on July 19, 2012,
at Pasadena, California

Filed - May 31, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Meredith A. Jury, Bankruptcy Judge, Presiding

_____

Appearances:    Jenny L. Doling, Esq. of the Law Offices of Jenny
                L. Doling argued for appellant, Fanda Hezam Fadel;
                Jeannette Marsala, Esq. of Prober & Raphael ALC
                argued for appellee, DCB United LLC, Trustee of the
                Eisenhower UDT 7-22-11.


Before: KIRSCHER, DUNN, and MARKELL, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

Appellee, DCB United, LLC, Trustee of the Eisenhower UDT 7-22-11 ("DCB"), purchased a single family residence located in La Quinta, California (the "Property") at a foreclosure sale on July 22, 2011, two days after appellant, debtor Fanda Hezam Fadel ("Mrs. Fadel"), filed her chapter 13[1] bankruptcy petition. At the time of the foreclosure sale, Mrs. Fadel resided in the Property with her husband, Mohamed Fadel ("Mr. Fadel"), and their seven children. Despite Mrs. Fadel's claims to the contrary, the bankruptcy court ultimately determined that she did not hold an ownership interest in the Property, the foreclosure sale was not void, and thus DCB was entitled to relief from the automatic stay to proceed with an unlawful detainer action against Mrs. Fadel in state court.

Because Mrs. Fadel conveyed any interest she had in the Property in 2001 to Mr. Fadel, and because she did not subsequently acquire an interest in the Property vis-à-viz California's community property law, we AFFIRM.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Mrs. Fadel has been married to Mr. Fadel since 1988. Throughout their marriage, Mr. Fadel has been employed outside of the home while Mrs. Fadel, with the exception of intermittent employment, has stayed at home to care for their seven children. Mr. Fadel purchased the Property in 2001. The grant deed,

---

[1] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

recorded on March 7, 2001, granted the Property to "Mohamed Fadel, a married man, as his sole and separate property."  On that same date, an interspousal transfer grant deed (the "Interspousal Deed") was recorded from Mrs Fadel conveying all of her interests, whether community or otherwise, to Mr. Fadel, who continued to hold the Property as his sole and separate property.

In August 2003, Mr. Fadel obtained a loan for $275,000 from Pacific Republic Mortgage Corporation.  In exchange for the loan, Mr. Fadel executed a deed of trust against the Property in favor of the lender.  The deed of trust lists the borrower as "Mohamed Fadel, a married man, as his sole and separate property."

Mr. Fadel eventually defaulted on the loan.  To fend off foreclosure by Bank of America ("B of A"),[2] on January 31, 2011, Mr. Fadel filed his own chapter 7 bankruptcy case.  Although his Schedule A identified the Property, it did not identify how title to the Property was held (i.e., husband, wife, joint, or community).  Mr. Fadel's Schedule D identified B of A as the first lienholder on the Property.  Although many codebtors were listed in Mr. Fadel's Schedule H, Mrs. Fadel was not listed as a codebtor on the deed of trust note, nor was the debt to B of A even mentioned.  Mr. Fadel received his discharge on May 26, 2011, and his case was closed on June 17, 2011.

Still faced with a pending foreclosure sale of the Property on July 22, 2011, Mrs. Fadel filed her own chapter 13 bankruptcy case on July 20, 2011.  Mrs. Fadel's Schedule A identified the Property, and it too did not identify how title to the Property

---

[2]  It is not clear in the record how B of A became the first lienholder on the Property, but this fact is not in dispute.

-3-

was held. In Mrs. Fadel's Schedule H, the box "none" was checked, indicating that no codebtors were liable on any of her debts. Mrs. Fadel's counsel notified B of A of the bankruptcy when she filed her petition on July 20, 2011. B of A proceeded with the foreclosure sale of the Property on July 22, 2011, as planned. DCB was the successful bidder. DCB recorded its trustee's deed on August 8, 2011.

On August 3, 2011, Mrs. Fadel filed a chapter 13 plan, which purported to cure all prepetition arrearages owed on the Property and to make monthly deed of trust note payments to B of A and the second lienholder. DCB opposed confirmation of the plan because Mrs. Fadel had no debt to reorganize with DCB, and because she had no income to fund a plan. The managing member of DCB stated in his declaration in support that DCB was unaware of any bankruptcy at the time it purchased the Property. The bankruptcy court overruled DCB's objection and confirmed the plan.

On September 15, 2011, DCB moved for relief from stay under § 362(d)(1) to proceed with an unlawful detainer action against Mrs. Fadel in state court ("Stay Relief Motion"). DCB asserted that it had acquired title to the Property at the foreclosure sale on July 22, 2011. In support, DCB attached copies of the grant deed and the Interspousal Deed. Through these deeds, DCB asserted that Mrs. Fadel had relinquished her community interest in the Property.

Mrs. Fadel opposed the Stay Relief Motion, contending that: (1) because the sale occurred postpetition and violated the automatic stay, it was void and DCB lacked standing to seek relief; and (2) because B of A had accepted her postpetition deed

-4-

of trust note payments, thereby substantially consummating the plan, DCB was bound by the provisions of the confirmed plan.[3]

The first hearing on DCB's Stay Relief Motion took place on November 2, 2011. The bankruptcy court noted that at the time of plan confirmation, it did not recognize the issue of whether Mrs. Fadel held an interest in the Property, but, rather, assumed that she did, and that DCB's purchase of the Property violated the stay. However, with Mrs. Fadel's interest in the Property in question, for which the bankruptcy filing may or may not have imposed an automatic stay, the court was not certain whether the sale was void. The bankruptcy court noted that the Interspousal Deed indicated that the Property, which would otherwise be community property, did not belong to Mrs. Fadel.

After further discussion, the bankruptcy court ordered additional briefing on the issue of whether Mrs. Fadel held an interest in the Property at the time she filed her chapter 13 petition, which would determine whether an automatic stay existed or not with respect to the Property. In her supplemental brief, Mrs. Fadel raised a multitude of arguments to establish an interest in the Property, despite her name not appearing on the title. Mrs. Fadel first argued that she held a possessory interest in the Property at the time of her bankruptcy filing, which constituted property of the estate protected by the automatic stay. Next, Mrs. Fadel, who is of Arab descent, argued that even though her cultural belief is that real property should be titled in the name of the husband, California's community

---

[3] The parties indicate in the record that B of A subsequently returned all plan payments submitted by Mrs. Fadel.

property law nonetheless gave her an interest in the Property protected by the automatic stay. Specifically, Mrs. Fadel argued that she had acquired a "pro tanto" community property interest in the Property since community funds were used to reduce the debt on the Property and fund improvements to it. Finally, Mrs. Fadel argued that, based on the Fifth Circuit case of Brown v. Chesnut (In re Chesnut), 422 F.3d 298 (5th Cir. 2005) [hereinafter "Chesnut"], she held at least an "arguable" interest in the Property on the petition date due to her community interest, and B of A violated the automatic stay when it conducted the foreclosure sale without first obtaining relief under § 362(d). Mrs. Fadel asked the bankruptcy court to adopt Chesnut and hold that the automatic stay applied to the Property, even if it was later determined that she had no interest in it. In her declaration in support, Mrs. Fadel stated that even though title to the Property was in Mr. Fadel's name only, she always believed that she and her husband owned the Property jointly.

DCB countered Mrs. Fadel's arguments, contending that since the Property was never part of her bankruptcy estate, it was not protected by the automatic stay, and thus the foreclosure sale was not void. DCB noted that Mrs. Fadel was not on the title or an obligor on the note secured by the deed of trust. As for any possible community interest, DCB contended that although under CAL. FAM. CODE § 760 the presumption is that all property acquired during a marriage is community property, CAL. EVID. CODE § 662 provides a conflicting presumption that the owner of the legal title to property is presumed to be the owner of the full beneficial title. Thus, argued DCB, legal title, which may be

-6-

rebutted only by clear and convincing evidence, trumps the community property presumption." According to DCB, evidence of community funds being used to improve the Property could not rebut Mrs. Fadel's admitted and clear intent to have the Property titled in Mr. Fadel's name as his sole and separate property, despite her claim that she always believed it was community property.

DCB also countered the cases cited by Mrs. Fadel, contending that they concerned the division of property upon dissolution, not the characteristics of property during marriage and, in any event, no writing evidencing the Fadels' intent to transmute the Property into community property, such as the recording of a quitclaim deed, existed as of the petition date. At best, argued DCB, even if Mrs. Fadel had a right to reimbursement for community contributions, that right is a monetary right; it does not change legal title to the Property. Finally, argued DCB, Mrs. Fadel's claimed possessory interest only protected her from loss of possession through eviction proceedings, which is why DCB sought relief from stay to commence its unlawful detainer action.

After carefully considering the issue, the bankruptcy court granted the Stay Relief Motion at the continued hearing on December 5, 2011. The court first determined that the confirmation order had no preclusive effect as to DCB's Stay Relief Motion because DCB was never a creditor of Mrs. Fadel and because the plan attempted to reorganize a debt for which Mrs. Fadel was not obligated.

In reaching its decision that the Property was not property of Mrs. Fadel's estate on the petition date and therefore no stay violation occurred rendering the sale void, the bankruptcy court

-7-

determined that legal title trumped any community interest she held in the Property, unless Mrs. Fadel was unaware she was giving away her interest in it. On that issue, the court found that Mrs. Fadel, for cultural reasons, knowingly and knowledgeably granted any interest she may have had in the Property to Mr. Fadel as his sole and separate property, and no subsequent writing existed transmuting it to community property. The court rejected Mrs. Fadel's argument that community contributions to the Property gave her a pro tanto community property interest in it, as that issue was relevant only between spouses upon dissolution; it was not relevant as to third parties where title controls.

The bankruptcy court distinguished <u>Chesnut</u> from the instant case, reasoning that Texas law controlled the <u>Chesnut</u> decision, which is different from California law. Under California law, legal title trumps the presumption that property acquired during the marriage is community property. The court agreed that Mrs. Fadel had a possessory interest in the Property on the petition date, but determined that the act of selling the Property at foreclosure affected title, not possession alone. Finally, although the court agreed with Mrs. Fadel that perhaps the better course of action would have been for B of A to obtain a comfort order before conducting the foreclosure sale, that did not change the outcome - Mrs. Fadel had no interest in the Property. The order granting the Stay Relief Motion was entered on December 15, 2011 ("Stay Relief Order").

Mrs. Fadel filed a timely motion for reconsideration of the Stay Relief Order (the "Reconsideration Motion"). She again asked the bankruptcy court to adopt the holding in <u>Chesnut</u>. Mrs. Fadel

-8-

also contended that the bankruptcy court erred in ruling that she did not have an interest in the Property as of the petition date. She argued, for the first time, that the Property was protected by the codebtor stay under § 1301(a) because, pursuant to CAL. FAM. CODE §§ 910 and 914, she was liable on the deed of trust debt incurred by Mr. Fadel during their marriage.

Mrs. Fadel further asserted, for the first time, that because she does not speak, read, or write in English, she did not know what she was signing when Mr. Fadel requested that she sign the Interspousal Deed, and therefore the presumption of "undue influence" trumped the title presumption in CAL. EVID. CODE § 662. In her declaration, Mrs. Fadel claimed she had no intention of granting away her interest in the Property. Mr. Fadel stated in his declaration that Mrs. Fadel did not understand that signing the Interspousal Deed meant she was relinquishing her interest in the Property.

Finally, Mrs. Fadel raised two of her previous arguments that (1) CAL. FAM. CODE §§ 914 and 920 gave her a pro tanto community property interest in the Property on the petition date due to her right to reimbursement, which she argued could be determined outside of dissolution, and (2) because DCB voluntarily submitted itself to the bankruptcy court's jurisdiction by opposing confirmation, it was bound by the confirmation order even if it was not a creditor. DCB opposed the Reconsideration Motion.

The bankruptcy court denied the Reconsideration Motion. It determined that no codebtor stay existed because all documentary evidence indicated that Mrs. Fadel was not an obligor on the deed of trust note. The court also expressed its reluctance to give

any weight to Mrs. Fadel's undue influence claim, as it would only provide the Fadels, who were not disputing an interest in property, the opportunity to conspire to create undue influence and manipulate the system for their benefit. The court noted that even if Mrs. Fadel's assertion were true, it would only render the Interspousal Deed voidable, not void. The court also rejected Mrs. Fadel's argument that she had acquired a pro tanto community property interest in the Property due to a right of reimbursement because reimbursement is a monetary right, not a property interest, and such right arises only between spouses upon dissolution.

Finally, the bankruptcy court again declined to adopt Chesnut. Noting that the Ninth Circuit has not yet considered the "arguable property" principle, the bankruptcy court reasoned that Chesnut is contrary to California's record notice policy, which allows parties to determine title to real property and to rely on that information. Here, the grant deed and the Interspousal Deed notified the world that Mr. Fadel held title to the Property as his sole and separate property, and that Mrs. Fadel had no interest in it. However, the bankruptcy court recognized that Chesnut raised a serious question of law and informed Mrs. Fadel that it would grant her a stay pending appeal, if requested.

An order denying the Reconsideration Motion was entered on February 3, 2012. Mrs. Fadel timely appealed the Stay Relief Order and the Reconsideration Order on that same date. The bankruptcy court entered an order granting a stay of the Stay Relief Order pending appeal on February 16, 2012.

-10-

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err when it determined that DCB was not bound by the confirmation order?

2. Did the bankruptcy court abuse its discretion in granting the Stay Relief Motion?

3. Did the bankruptcy court abuse its discretion in denying the Reconsideration Motion?

## IV. STANDARDS OF REVIEW

We review findings of fact for clear error and issues of law de novo. Hoopai v. Countrywide Home Loans, Inc. (In re Hoopai), 369 B.R. 506, 509 (9th Cir. BAP 2007).

Whether property is included in a bankruptcy estate is a question of law subject to de novo review. Sticka v. Lambert (In re Lambert), 283 B.R. 16, 18 (9th Cir. BAP 2002).

We review an order granting relief from stay for abuse of discretion. Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009).

A denial of a motion for reconsideration is reviewed for an abuse of discretion. Hansen v. Moore (In re Hansen), 368 B.R. 868, 875 (9th Cir. BAP 2007).

In determining whether the bankruptcy court abused its discretion, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc). If the bankruptcy court identified the

correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

**V. DISCUSSION**

**A.    The bankruptcy court did not err in determining that the confirmation order was not binding on DCB.**

Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the Debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

As the bona fide purchaser of the Property at the foreclosure sale two days after Mrs. Fadel filed her chapter 13 bankruptcy case, we agree with the bankruptcy court that DCB was not a "creditor" of Mrs. Fadel bound by the confirmation order. Section 101(10)(A) defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[4]  Section 101(5), in pertinent part, defines a claim as a "right to payment, . . . ."  See Blue v. Town of Lake Bldg. Corp. (In re Blue), 247 B.R. 748, 751-52 (Bankr. N.D. Ill. 2000)(party not a creditor of the debtor is not bound by debtor's confirmed chapter 13 plan).  As such, DCB was not precluded from moving for relief from the automatic stay.

While Mrs. Fadel concedes that DCB was not a creditor, she

---

[4]  Section 101(10)(B) and (C) provide additional definitions not relevant to this discussion.

contends DCB was still bound by the confirmation order, which was final and not appealed, because DCB voluntarily subjected itself to the bankruptcy court's jurisdiction when it objected to her plan as a party in interest. Mrs. Fadel cites no authority to support her assertion. We also reject Mrs. Fadel's argument that the bankruptcy court erred by "vacating" the confirmation order under Civil Rule 60(b)(4). Nothing in the record reflects that the order was vacated. The bankruptcy court did not err when it determined that DCB was not bound by the confirmation order.

**B.   The bankruptcy court did not abuse its discretion when it granted the Stay Relief Motion.**

**1.   Applicable law.**

Upon the filing of a bankruptcy petition, an estate is created comprised of "all legal or equitable interests of the debtor in property," "wherever located or by whomever held," "as of the commencement of the case." § 541(a)(1). According to § 541(a)(2), property of the bankruptcy estate includes:

> All interests of the debtor and the debtor's spouse in community property as of the commencement of the [bankruptcy] case that is-
>
> (A) under the sole, equal, or joint management and control of the debtor; or
>
> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

While this provision defines what interests of the debtor are included in the bankruptcy estate, it does not address "'the threshold questions of the existence and scope of the debtor's interest in a given asset.'" Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1084 (9th Cir. 1998)(quoting State of Cal. v. Farmers

-13-

Mkts., Inc. (In re Farmers Mkts., Inc.), 792 F.2d 1400, 1402 (9th Cir. 1986)). Rather, the bankruptcy court must look to state property law to determine whether, and to what extent, the debtor has any legal or equitable interests in property as of the commencement of the case. Id. (citing Butner v. United States, 440 U.S. 48, 55 (1979)).[5]

The filing of the bankruptcy petition creates an automatic stay under § 362(a), which operates to enjoin specific acts against the debtor, property of the debtor and property of the estate. § 362(a)(3), (4), (5) and (6). However, under § 362(d), a "party in interest" may request relief from the stay. Upon request, § 362(d) requires the bankruptcy court to grant relief from the automatic stay upon the showing of "cause," or when no equity exists in a property and the property is not necessary to debtor's effective reorganization. See § 362(d)(1) and (d)(2). What constitutes "cause" to terminate the stay is determined on a case-by-case basis. Delaney-Morin v. Day (In re Delaney-Morin), 304 B.R. 365, 369 (9th Cir. BAP 2003)(citing MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 717 (9th Cir. 1985)).

**2. Analysis.**

Mrs. Fadel assigns several errors to the bankruptcy court's decision to grant DCB relief from stay to proceed with its

---

[5] Rule 7001(2) and Ninth Circuit law require an adversary proceeding to determine "an interest in property." Brady v. Andrew (In re Commercial W. Fin. Corp.), 761 F.2d 1329, 1336-38 (9th Cir. 1985). Neither of the parties raised any issue as to whether Mrs. Fadel could allege a property interest as a defense to a contested matter or if she needed to initiate an adversary proceeding. As the issue has not been raised, the Panel takes no position on whether any waiver has occurred. Unq. v Boni (In re Boni), 240 B.R. 381, 386(9th Cir. BAP 1999).

-14-

unlawful detainer action against her in state court.  We address each argument in turn.

### a. Legal title presumption trumps the community property presumption.

Under the "form of title" presumption, the description in a deed as to how title is held presumptively reflects the actual ownership status of the property.  In re Marriage of Brooks, 169 Cal.App.4th 176, 184-85 (Cal. Ct. App. 2008)(citing In re Marriage of Haines, 33 Cal.App.4th 277, 292 (Cal. Ct. App. 1995)).  This common law presumption has been codified in CAL. EVID. CODE § 662, which states, "The owner of the legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing proof."  California's form of title presumption "is based on promoting the public policy in favor of the stability of titles to property," and "allegations that legal title does not represent beneficial ownership have been historically disfavored because society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title."  In re Marriage of Brooks, 169 Cal.App.4th at 184-85 (citations and quotation marks omitted).  Absent a showing to the contrary, the characterization of the Property in the title will control.

It is undisputed that the Fadels acquired the Property during marriage.  Under CAL. FAM. CODE § 760, a general presumption exists that property acquired during the marriage is community property.  However, "the affirmative act of specifying a form of ownership in the conveyance of title . . . removes such property from the more general presumption."  In re Marriage of Lucas, 27 Cal.3d 808,

-15-

814-15 (Cal. 1980), rev'd on other grounds by CAL. FAM. CODE § 2581 (citing Socol v. King, 36 Cal.2d 342, 346 (Cal. 1950)). The "act of taking title to property in the name of one spouse during marriage with the consent of the other spouse effectively removes that property from the general community property presumption. In that situation, the property is presumably the separate property of the spouse in whose name title is taken." In re Marriage of Brooks, 169 Cal.App.4th at 186-87 (citing 5 Miller & Starr, Cal. Real Estate § 12:41, p. 12-110 (3d ed. 2006)). See Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1201 (9th Cir. 2012)(in California no community property presumption exists where a spouse acquires property in his name alone with the other spouse's consent). Here, the recorded grant deed, the recorded Interspousal Deed and all other documents related to the purchase of the Property confirm that the owner (and the person responsible for repayment of the deed of trust note) was only Mr. Fadel. These documents, showing clear title to the Property in Mr. Fadel as his "sole and separate property," displace any community property presumption.

The only way Mrs. Fadel could overcome the form of title presumption was to show "undue influence" by Mr. Fadel. Under California's community property law, the presumption of undue influence, based on the confidential relationship between spouses, arises when an interspousal transaction advantages one spouse over the other. See CAL. FAM. CODE § 721. In that circumstance, title presumption and application of CAL. EVID. CODE § 662 are improper. In re Marriage of Haines, 33 Cal.App.4th at 301-02. In other words, the rebuttable presumption of undue influence, if proven,

-16-

trumps the title presumption.  Id.  "When a presumption of undue influence applies to a transaction, the spouse who was advantaged by the transaction must establish that the disadvantaged spouse's action was freely and voluntarily made, with a full knowledge of all the facts, and with a complete understanding of the effect of the transaction."  In re Marriage of Fossum, 192 Cal.App.4th 336, 344 (Cal. Ct. App. 2011)(citations and quotation marks omitted).  The question of "whether the spouse gaining an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence."  Id. (citations and quotation marks omitted).

In her declaration in support of the Reconsideration Motion, Mrs. Fadel stated, for the first time, that she did not know what the Interspousal Deed was when she signed it and that it was not her intention to give up her community interest in the Property by signing the document.  The bankruptcy court rejected Mrs. Fadel's testimony as self-serving, and it contradicted her earlier statement that, based on her cultural beliefs, all property should be titled in the name of her husband.  The court further concluded that even if undue influence existed, the Interspousal Deed would merely be voidable, not void.

Although Mrs. Fadel raised undue influence before the bankruptcy court, she appears to raise it only in passing on appeal.  To the extent she assigns error to the bankruptcy court's finding of no undue influence, we disagree.  First, Mrs. Fadel raised this defense for the first time in her Reconsideration Motion, so the bankruptcy court did not have to consider it.  See

-17-

*In re Greco*, 113 B.R. 658, 664 (D. Haw. 1990), aff'd and remanded, *Greco v. Troy Corp.*, 952 F.2d 406 (9th Cir. 1991)(a motion for reconsideration is not for asserting new legal theories or new facts that could have been raised at the initial hearing); *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (court does not abuse its discretion when it disregards legal arguments made for the first time in a motion to amend)(citing *Rosenfeld v. U. S. Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995)). To the extent the bankruptcy court did consider her undue influence argument, we agree that Mrs. Fadel knowingly and knowledgeably signed the Interspousal Deed to effectuate her intent and cultural belief that Mr. Fadel would hold title to the Property as his separate property. If she was ignorant of its legal ramifications, even assuming she could assert such a claim now, at best this would only render the Interspousal Deed voidable, not void. *Fallon v. Triangle Mgmt. Servs., Inc.*, 169 Cal.App.3d 1103, 1106 (Cal. Ct. App. 1985)("[A] deed [is] voidable, not void, if obtained as a result of undue influence . . . . [A] deed . . . procured by duress cannot be set aside as against a party purchasing in ignorance of the facts constituting the duress, that is to say as against a purchaser for a valuable consideration and without notice of the duress.")(citing *Conn. Life Ins. Co. v. McCormick*, 45 Cal. 580 (Cal. 1873)). See also *Camacho v. Camacho*, 1994 WL 424429, at *4 (E.D. Cal. 1994)(citing *Fallon* and holding same). Moreover, because the Fadels are not disputing ownership of the Property, and because they are still married, whether the defense of undue influence applies is doubtful, especially since Mrs. Fadel undertook no action to

-18-

rescind the Interspousal Deed prior to DCB's purchase of the Property. See Fallon, 169 Cal.App.3d 1103, 1106. Mr. Fadel's attempt to testify as to what Mrs. Fadel knew or did not know about the legal ramifications of signing the Interspousal Deed was inappropriate, and the bankruptcy court was free to reject it. FED. R. EVID. 602. Notably, Mr. Fadel never testified that he intended anything other than that he would solely and separately hold title to the Property.

### b. CAL. FAM. CODE § 920 does not give Mrs. Fadel an ownership interest in the Property.

Nonetheless, Mrs. Fadel contends the bankruptcy court erred in determining that she did not acquire an interest in the Property by virtue of California's community property law. Specifically, Mrs. Fadel argues that CAL. FAM. CODE § 920[6] provides

---

[6] A right of reimbursement provided by this part is subject to the following provisions:

(a) The right arises regardless of which spouse applies the property to the satisfaction of the debt, regardless of whether the property is applied to the satisfaction of the debt voluntarily or involuntarily, and regardless of whether the debt to which the property is applied is satisfied in whole or in part. The right is subject to an express written waiver of the right by the spouse in whose favor the right arises.

(b) The measure of reimbursement is the value of the property or interest in property at the time the right arises.

(c) The right shall be exercised not later than the earlier of the following times:

(1) Within three years after the spouse in whose favor the right arises has actual knowledge of the application of the property to the satisfaction of the debt.

(2) In proceedings for division of community and quasi-community property pursuant to Division 7 (commencing with Section 2500) or in proceedings upon the death of a spouse.

-19-

her with a right to reimbursement, which she contends created a pro tanto community property interest in the Property protected by the automatic stay. Mrs. Fadel argues that, under California law, when community funds are used to reduce the principal of a deed of trust debt on one spouse's separate property, the community acquires a pro tanto interest in the property, citing In re Marriage of Moore, 28 Cal.3d 366, 371-72 (Cal. 1980)(en banc)["Moore"], and In re Marriage of Marsden, 130 Cal.App.3d 426, 436-37 (Cal. Ct. App. 1982)["Marsden"], otherwise known as the "Moore/Marsden rule." Mrs. Fadel notes that the Moore/Marsden rule was extended to include community expenditures for improvements to one spouse's separate property in Bono v. Clark, 103 Cal.App.4th 1409, 1423 (Cal. Ct. App. 2002).

Contrary to Mrs. Fadel's contentions, however, the form of title presumption is not rebutted merely because the property is acquired during marriage. "[T]he act of taking title to property in the name of one spouse during marriage with the consent of the other spouse effectively removes that property from the general community property presumption. . . . [T]he property is presumably the separate property of the spouse in whose name title is taken." In re Brooks, 169 Cal.App.4th at 186-87. Mrs. Fadel, given the rebuttable form of title presumption, had the burden to prove by clear and convincing evidence that an agreement or understanding existed between the parties "that the title reflected in the deed is not what the parties intended." Id. at 189. This presumption cannot be rebutted by: "tracing the funds used to purchase the property;" "testimony of an intention not disclosed to the grantee at the time of the execution of the conveyance;" or "evidence that

-20-

title was taken in a particular manner merely to obtain a loan." Id. at 190 (citations omitted). The clear and convincing evidence standard "requires evidence that is 'so clear as to leave no substantial doubt' [and] 'sufficiently strong to command the unhesitating assent of every reasonable mind.'" Id.

The record in this case establishes that the form of title presumption prevails over the community property presumption and the application of the Moore/Marsden rule. Mr. Fadel acquired title to the Property from a third party through a grant deed, during his marriage to Mrs. Fadel, on March 7, 2001. Mrs. Fadel, through a grant deed, conveyed all of her right, title, and interest, including community or otherwise, to Mr. Fadel on March 7, 2001. In 2003, Mr. Fadel obtained a loan in his own name secured by the Property. The recorded deed of trust states that the Property used to secure the loan, is "his sole and separate property." Subsequently, Mr. Fadel defaulted on the loan; a foreclosure was initiated, and Mr. Fadel filed a chapter 7 bankruptcy. He listed the Property and the secured debt on the Property without any reference to any alleged interest held by Mrs. Fadel. After his discharge and the closure of his case, Mrs. Fadel filed a chapter 13 bankruptcy. She listed the Property and the corresponding secured debt without stating any alleged interest held by Mr. Fadel.

The grant deeds through which Mr. Fadel acquired the Property from the third party and from Mrs. Fadel conveyed their entire interests in the Property including any after-acquired interest and any community property interest. See 3 Miller & Starr, Cal. Real Estate § 8.5 (3d ed. 2012). On this record, we conclude that

-21-

Mrs. Fadel has not rebutted, with clear and convincing evidence, the form of title presumption that Mr. Fadel held the Property as his sole and separate property. Consequently the Moore/Marsden rule never became applicable.

Mrs. Fadel contends In re Boyd, 410 B.R. 95, 99 (Bankr. N.D. Cal. 2009), held that a pro tanto community property interest arises even where the other spouse's separate property at issue was purchased during the marriage. In that case, the non-debtor spouse purchased a home with his separate funds during the marriage. The non-debtor spouse held title in his name alone, and the debtor executed multiple interspousal transfer deeds disclaiming any interest in the home. Nonetheless, the bankruptcy court, in In re Boyd, citing Moore/Marsden, stated that the community (and thus debtor's bankruptcy estate) acquired an interest in the home because the debtor's husband's income, which was allegedly community property, was used to reduce the principal on the deed of trust debt.

The Panel concludes that In re Boyd is distinguishable, and we reject the application of its conclusions in this appeal for the following reasons: (1) the form of title presumption discussed in In re Brooks, 169 Cal.App.4th at 189-91, was not addressed in In re Boyd; (2) the types of the deeds were not discussed, i.e., grant versus quitclaim deeds; and (3) the application of the Moore/Marsden rule apparently was not contested in In re Boyd but was vigorously argued in this case.

**c.    The codebtor stay does not apply.**

The codebtor stay of § 1301(a) enjoins a creditor from taking legal action to "collect any part of a consumer debt of the debtor

-22-

from any individual that is liable on such debt with the debtor, or that secured such debt."[7] Thus, three elements must be satisfied for the codebtor stay to apply: (1) the debt must be a consumer debt; (2) the consumer debt at issue must be a debt of the debtor; and (3) the codebtor must be liable on the debt with the debtor.

Under § 101(8), a consumer debt is one incurred for "personal, family, or household purposes." A deed of trust debt, which consists of debt incurred to purchase the debtor's principal residence or to improve it, is a "consumer debt" under § 101(8). Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988). Thus, the debt on the Property is a consumer debt.

Section § 1301(a) further requires that the consumer debt at issue be a debt of the debtor and the codebtor must be liable on the debt with the debtor. Thus, the codebtor must be both "liable on" such debt and "liable with" the debtor to some third party. Meyer v. Hill (In re Hill), 268 B.R. 548, 553 (9th Cir. BAP 2001)(applying same language appearing in § 1322(b)(1)). The phrase "such debt" refers to the consumer debt that the creditor is trying to collect. As such, not only must both the debtor and codebtor be liable to some third party, they must also both be liable on the particular debt the creditor is trying to collect.

It is undisputed that the only obligor on the deed of trust note was Mr. Fadel. However, Mrs. Fadel contends that she is nonetheless personally liable for the debt under CAL. FAM. CODE § 914, which provides in relevant part:

---

[7] Section 1301(a) provides for two exceptions to the codebtor stay, neither of which apply here.

> (a) a married person is personally liable for the following debts incurred by the person's spouse during marriage:
>
> (1) A debt incurred for necessaries of life of the person's spouse while the spouses are living together.
>
> . . . .

The "necessaries of life" include food, clothing, and shelter. Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2012) ¶ 8:753 ["Cal. Practice Guide"].

The bankruptcy court determined that the codebtor stay did not apply because Mrs. Fadel was not an obligor on the note. This conclusion does not appear to address the specific issue she raises. We begin our review by noting that Mrs. Fadel improperly asserted the codebtor stay argument for the first time in the Reconsideration Motion. Zimmerman, 255 F.3d at 740. We further observe that neither Mr. Fadel nor Mrs. Fadel listed each other in their respective Schedule H's as a codebtor on any debt. In any event, we reject Mrs. Fadel's theory.

First, CAL. FAM. CODE § 914(a) cannot be read in a vacuum; it must be read in conjunction with CAL. FAM. CODE § 914(b) and (c). Importantly, CAL. FAM. CODE § 914(b) states:

> (b) The separate property of a married person may be applied to the satisfaction of a debt for which the person is personally liable pursuant to this section. If separate property is so applied at a time when nonexempt property in the community estate or separate property of the person's spouse is available but is not applied to the satisfaction of the debt, the married person is entitled to reimbursement to the extent such property was available. (Emphasis added).

In other words, Mrs. Fadel's "separate" property can be used to satisfy a debt incurred by Mr. Fadel during the marriage and while they are living together. However, by its very language, CAL. FAM.

-24-

CODE § 914 applies only in the case where the married person's separate property was used to satisfy a debt of his or her spouse, and it sets forth the married person's reimbursement rights. See Collection Bureau of San Jose v. Rumsey, 24 Cal.4th 301, 312 (Cal. 2000). Because Mr. Fadel was in default on the deed of trust note, B of A, pursuant to the deed of trust, foreclosed on the Property in an attempt to collect on the collateral securing the debt. The collateral (i.e., the Property) was never Mrs. Fadel's separate property and she did not use any separate property to satisfy Mr. Fadel's debt. Therefore, no reimbursement rights have been triggered under CAL. FAM. CODE § 914, and that statute does not apply. In addition, contrary to Mrs. Fadel's assertion, CAL. FAM. CODE § 910[8] does not apply here either because the Property was not part of the community estate; it was Mr. Fadel's sole and separate property. Mrs. Fadel was not liable on the deed of trust note by virtue of CAL. FAM. CODE § 914, and the note was not a "debt of the debtor." Consequently, the codebtor stay does not apply.

### d. We decline to adopt Chesnut.

The bankruptcy court declined to adopt Chesnut, but, because it viewed the issue as one having potentially great legal significance, it granted Mrs. Fadel a stay pending appeal of the Stay Relief Order while we considered it.

In Chesnut, a stay violation case, the creditor conducted a

---

[8] CAL. FAM. CODE § 910 states, in relevant part, that:

(a) the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt.
. . . .

-25-

postpetition foreclosure on real property in which the debtor claimed a community-ownership interest without first obtaining relief from stay. Title to the property was characterized as the non-filing wife's separate property, but the debtor listed the property in his Chapter 13 bankruptcy petition, contending that it was a community asset since it was purchased during the marriage and with community funds. The debtor sued the creditor for allegedly violating the automatic stay. Without deciding the substantive issue of whether the property was a community asset belonging to the debtor or his bankruptcy estate, the bankruptcy court determined that the debtor at least held an equitable interest in the property that was adversely affected by the foreclosure sale. Chesnut v. Brown, 300 B.R. 880, 883 (Bankr. N.D. Tex. 2004).

The district court reversed, holding that no violation of the stay occurred because the debtor had no interest in his wife's separate property. Chesnut v. Brown, 311 B.R. 446, 449 (N.D. Tex. 2004). In reaching its decision, the district court noted:

> The bankruptcy court determined, without citing any authority, that the mere fact that debtor gave notice of his bankruptcy filing and said that he claimed an interest in the Property was enough to stop the foreclosure sale. If that were the law, no one would be able to rely on chain of title to deal with real property in Texas. The bankruptcy court in effect ruled that property acquired during marriage is community property despite how it is titled. The inception of title rule is to the contrary: 'Property acquired during marriage acquires its status of separate or community at the time of its acquisition.' Henry S. Miller Co. v. Evans, 452 S.W. 2d 426, 430 (Tex. 1970). As the Texas Supreme Court has noted, '[t]he act of the spouses in taking a conveyance of property in the name of the wife, limiting the title to her separate use, unmistakably evidences an intention that the same shall belong to her separate estate.' Id. Moreover, extrinsic evidence cannot be offered to contradict the express recitals in a deed

-26-

without first tendering competent evidence that there was fraud, accident, or mistake in the insertion of the recitals in the deed. <u>Id.</u> at 431. There is no such evidence here.

At best, reasoned the district court, the debtor maybe had a claim for economic contribution (i.e., a right to reimbursement), but such a claim did not create an ownership interest in the real property. <u>Id.</u>

The Fifth Circuit reversed the district court, holding that the automatic stay applies to all property "arguably" owned by the debtor, even if it is later determined that the debtor did not own the property. <u>Chesnut v. Brown</u>, 422 F.3d at 304-05. In other words, the stay applies regardless of the ultimate merits of the debtor's ownership interest claim.

We decline to adopt such a rule. As the district court in <u>Chesnut</u> so insightfully put it: "If that were the law, no one would be able to rely on chain of title to deal with real property in Texas." <u>Chesnut</u>, 311 B.R. at 449. The same would be true in California, a state that has decided for public policy reasons that "form of title" prevails, unless a spouse's undue influence can be shown by clear and convincing evidence. Adopting <u>Chesnut</u> would essentially render the recording system in California (and many other Ninth Circuit states) nugatory, and it conflicts with California's policy that creditors and other interested parties can rely on title. <u>In re Marriage of Brooks</u>, 169 Cal.App.4th at 185.

In <u>In re Pettit</u>, a stay violation case, the debtors asked the Ninth Circuit to conclude that, where there is a bona fide dispute as to whether property is part of the bankruptcy estate, the

-27-

burden should be on the creditor to seek a determination from the bankruptcy court before obtaining the disputed property. In re Pettit, 217 F.3d 1072, 1081 (9th Cir. 2000). The Court declined to extend Ninth Circuit precedent "to craft a novel rule on this issue." Id. Here, we have less than a "bona fide" dispute over property interests; we have merely a debtor claiming what she contends is an arguable interest in a property she consciously chose to relinquish to her husband.

The facts in this case certainly do not warrant any change in Ninth Circuit law. "We decline to follow Chesnut because we are convinced that its expansive reading of the term 'property of the estate' is inconsistent with the plain language of that term's statutory definition. See § 541(a)(1); see also Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984) (stating that property of the estate under § 541(a) consists of the debtor's property rights as of the date of the bankruptcy filing – 'no more, no less'); Frazer v. Drummond (In re Frazer), 377 B.R. 621, 626-27 (9th Cir. BAP 2007)(same)." Jahr v. Frank (In re Jahr), 2012 WL 3205417, at *7 (9th Cir. BAP Aug. 1, 2012).

Since Mrs. Fadel had no community interest in the Property as of the bankruptcy petition date, which would be protected by the automatic stay, and DCB showed sufficient "cause" for relief under § 362(d)(1) to pursue its unlawful detainer action, the bankruptcy court did not abuse its discretion when it granted the Stay Relief Motion.

**C.    The bankruptcy court did not abuse its discretion in denying the Reconsideration Motion.**

Although Mrs. Fadel did not cite under which rule she was

-28-

bringing her Reconsideration Motion, the bankruptcy court opted to treat it as a timely motion to alter or amend judgment under Civil Rule 59(e), made applicable here by Rule 9023, which thereby tolled the appeal time of the Stay Relief Order. We agree with the bankruptcy court's characterization. A motion for reconsideration filed within 14 days of the underlying order is treated as a motion to alter or amend a judgment under Civil Rule 59(e) and tolls the time within which to file a notice of appeal of the underlying order until the order on reconsideration is entered. Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001)(applying the former 10-day rule).

Amendment or alteration of a judgment is appropriate under Civil Rule 59(e) only if the court (1) is presented with newly discovered evidence that was not available at the time of the original hearing, (2) committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law. Zimmerman, 255 F.3d at 740 (citing School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993)). Although Mrs. Fadel appealed the Reconsideration Order, she fails to argue how the bankruptcy court abused its discretion in denying the Reconsideration Motion. As such, she has waived this issue for purposes of appeal. See Wake v. Sedona Inst. (In re Sedona Inst.), 220 B.R. 74, 76 (9th Cir. 1998)(an issue not briefed is deemed waived). Even if we considered it, the Reconsideration Motion improperly raised legal arguments and/or alleged new facts that Mrs. Fadel could have raised at the initial hearing, and it improperly rehashed

-29-

arguments she had already presented.  <u>In re Greco</u>, 113 B.R. at 664.  Therefore, she asserted no appropriate grounds for granting the Reconsideration Motion.  <u>Zimmerman</u>, 255 F.3d at 740. The bankruptcy court did not abuse its discretion in denying the Reconsideration Motion.

**VI. CONCLUSION**

Under California law, DCB took free and clear title to the Property upon completion of the foreclosure sale.  <u>See</u> 4 Miller & Starr, Cal. Real Estate § 10:208 (3d ed. 2009)(under California law, "[t]he purchaser at the foreclosure sale receives title free and clear of any right, title, or interest of the trustor or any grantee or successor of the trustor.").  Mrs. Fadel was not on the title to the Property and she did not acquire an ownership interest in the Property vis-à-viz California's community property law prior to the sale.  After the foreclosure sale, Mrs. Fadel was simply a tenant at sufferance claiming a possessory interest in the Property through Mr. Fadel.  Seeing no error here by the bankruptcy court in granting DCB relief to pursue its unlawful detainer action, we AFFIRM.